| | |
|---|---|
| DEAGO BUCK,<br><br>    Plaintiff,<br><br>v.<br><br>GOYIM DEFENSE LEAGUE et al.,<br><br>    Defendants. | Case No. 3:25-cv-00677<br><br>Judge Eli J. Richardson<br>Magistrate Judge Luke A. Evans |

To:    The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff Deago Buck (Buck) tried for months to locate and to serve defendant Colby Alexander Frank (Frank) with an alias summons and a copy of the complaint in this case. After filing a motion for alternative service (Doc. No. 43), Buck finally succeeded in serving Frank by leaving papers with Frank's father at their domicile in Sarasota County, Florida. Frank disagrees with the validity of the service, however, and has filed a motion to dismiss for insufficient process and for insufficient service of process under Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure. (Doc. Nos. 45, 48.)[1]

For the reasons below, the Court recommends denying Frank's motion and denying Buck's motion as moot.

---

[1]    Frank's motion appears twice in the docket, at Document Numbers 45 and 48. Because the papers in each docket entry are identical, the Court will treat both docket entries as a single motion and will refer to Frank's motion in the singular.

## I. Background

### A. Factual Background

Both pending motions concern Buck's attempts to serve Frank with a summons and with a copy of the complaint. The original summons issued on July 9, 2025 and was addressed to "Colby Alexander Franks" at an address in Savannah, Tennessee. (Doc. No. 21 at 5.) Service in Tennessee did not succeed, but Buck identified someone named "Colby Alexander Frank" in Florida who appeared to be the intended defendant described in the complaint. (Doc. No. 40 at 3.) Buck subsequently obtained an alias summons directed to "Colby Alexander Franks a.k.a. Colby Alexander Frank" at an address in Spring Hill, Florida. (Doc. No. 32.) Service at the Spring Hill address was ineffective. (Doc. No. 40 at 4.) Buck continued his efforts to locate Frank and found another "Colby Alexander Frank" residing in Sarasota County, Florida. (Doc. No. 41 at 5.) After obtaining an extension of the service deadline (Doc. No. 42), Buck filed his pending motion for alternative service on an e-mail address and on a post office box that a process server investigated and believed that Frank was using. (Doc. No. 43-1 at 6.) Buck described how service attempts at the Sarasota County address had failed through the filing of the motion. (*Id.* at 4–5.)

While the motion for alternative service was pending, Buck's process server allegedly succeeded with another service attempt at the Sarasota County address. On November 5, 2025, the process server returned to the Sarasota County address—1081 Cod Street in North Port, Florida— and knocked on the door. (Doc. No. 44 at 1.) A man over 70 years of age answered the door and identified himself as Frank's father. (*Id.*) Frank's father allegedly stated that Frank was not there at the time and that he would not accept documents from the process server but that the process server could leave the documents at the door. (*Id.*) The process server left a copy of the alias summons and of the complaint at the front door in Frank's father's view. (*Id.*; Doc. No. 50-11 at 2 (photo of document delivery).)

2

Additional investigation uncovered other information linking Frank and his father to the Sarasota County address. Frank has used the Sarasota County address for his voter registration since 2010. (Doc. No. 50-2 at 2.) Frank's father used the Sarasota County address and the e-mail address identified for alternative service in state court proceedings. (Doc. No. 50-4 at 2.) A New York UCC Financing Statement purportedly filed by Frank in 2022 contains Frank's name and the Sarasota County address. (Doc. No. 50-5 at 2.) When Frank registered a limited liability company in Florida, he used the Sarasota County address as the principal address, the mailing address, and the registered agent's address. (Doc. No. 50-6 at 2.) Finally, to confirm Frank's father's capacity, Buck's counsel attended a video broadcast of a state court proceeding in which Frank's father represented himself, offered factual testimony, and made legal arguments. (Doc. No. 50-1 at 4.)

B.      **Procedural History**

Frank filed his motion on November 25, 2025 and asserts several grounds for dismissal. Frank denies any assertion from the process server that his father would have permitted documents to be left at the front door of the Sarasota County address because "Mr. Frank does not accept documents." (Doc. No. 45 at 1.) Frank asserts that process was insufficient because the address listed on the alias summons does not match the Sarasota County address where the process server allegedly served his father. (*Id.* at 2.) Frank denies that the Sarasota County address is his "usual place of abode or a residence where he currently resides, contrary to the server's affirmation." (*Id.*) Frank accuses the process server of perjury and "sewer service" because his father allegedly told the process server during each of two interactions at the Sarasota County address that Frank does not live there. (*Id.*) The process server lied further, according to Frank, because the server described events that contradict proper notice: Frank's father's refusal to state Frank's marital or military status and refusal to accept documents; plus the server's decision to leave documents at the front door. (*Id.*) Finally, even if the process server left documents in Frank's father's presence,

3

Frank argues that the process server committed trespass and that his father is legally disabled and would not have been able to have documents left with him. (*Id.* at 3.)

Buck opposes dismissal based on the aggregate of his investigative work to find and to serve Frank. Buck argues that the Sarasota County address is currently associated with Frank through voter registration, Florida state court proceedings, a New York UCC statement, and a Florida corporate registration. (Doc. No. 50 at 2.) Buck notes that the Sarasota County address additionally must be Frank's usual place of abode because public records searches uncovered only one other address linked to Frank—a vacation rental address in Destin, Florida associated with a condominium owned by Frank's parents. (*Id.*; Doc. No. 50-7.) Additionally, Buck has furnished evidence of e-mail messages that Frank sent to Buck's counsel, after service of process, that suggest that Frank is aware of this case. (Doc. No. 50 at 3.) Frank's awareness of this case, according to Buck, indicates that service of process was effective.

Buck argues further that the factual record of service on Frank overcomes Frank's legal arguments. Buck acknowledges the discrepancy between the address on the alias summons and the address where Frank was served but argues that Rule 4(a) does not require an address at all, rendering the discrepancy inconsequential. Buck argues that the process server properly identified the Sarasota County address as a usual place of abode for both Frank and his father, meaning that leaving the summons and complaint with Frank's father was procedurally proper and did not constitute a trespass. Finally, Buck asserts that any refusal by Frank's father to confirm marital or military status was irrelevant and that Frank's father's ability to represent himself in state court— absent any contrary evidence—satisfies Rule 4's requirement that papers be left with a person of suitable age and discretion.

## II.      Legal Standard

"Due process requires service of process in order to obtain in personam jurisdiction over an individual defendant." *Sawyer v. Lexington-Fayette Urb. Cnty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001) (unpublished opinion) (citation omitted). To give notice[2] of personal jurisdiction over a defendant, a plaintiff must satisfy Rule 4's requirements for both process and service of process. A challenge to process under Rule 12(b)(4) is an assertion that a plaintiff did not comply with the requirements for the contents and for the issuance of a summons under Rules 4(a) and 4(b). *Rose v. Bersa*, 327 F.R.D. 628, 632 (S.D. Ohio 2018) (citations omitted); *Ericson v. Pollack*, 110 F. Supp. 2d 582, 584 (E.D. Mich. 2000) (citations omitted). A challenge to service of process under Rule 12(b)(5) is an assertion that a plaintiff did not comply with the requirements for service under the subdivision in Rules 4(e) through 4(j) that applies to the moving defendant. *See Marrero v. Miller*, No. 2:15-CV-1140, 2015 WL 4874703, at *1 (S.D. Ohio Aug. 14, 2015) (citations omitted). When a defendant challenges process or service of process, "[t]he objection to insufficiency of process or its service should point out specifically in what manner the plaintiff has failed to satisfy the requirements of the service provision that was utilized." *King v. Taylor*, 694 F.3d 650, 657 (6th Cir. 2012) (internal quotation marks and citation omitted). A court may review evidence in the record including undisputed affidavits. *See Edwards v. Wilson Cnty. Gov't*, No. 3:24-CV-00831, 2025 WL 3568298, at *3 (M.D. Tenn. Dec. 11, 2025) (citations omitted), *report and recommendation adopted*, No. 3:24-CV-00831, 2026 WL 184200 (M.D. Tenn. Jan. 23, 2026);

---

[2]      Compared to giving notice and asserting personal jurisdiction, the actual existence of personal jurisdiction technically is a different issue that is challenged under Rule 12(b)(2). *See, e.g., Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019) (citing 5B Fed. Prac. & Proc. Civ. § 1353 (4th ed. and 2026 Supp.); *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021) (citation omitted); *Winston v. Walsh*, No. 5:19-CV-00070-TES, 2020 WL 1493659, at *3 (M.D. Ga. Mar. 27, 2020) (citation omitted).

5

*Spencer v. Caracal Int'l, LLC*, 516 F. Supp. 3d 755, 758 (M.D. Tenn. 2021) (citations omitted). The plaintiff ultimately bears the burden of showing proper service. *See Sawyer*, 18 F. App'x at 287 (plaintiff bears burden of showing that proper service was made).

The Sixth Circuit appears not to have specified the exact burden that a plaintiff must satisfy to defeat a Rule 12(b)(4) or 12(b)(5) motion. A defect in due process, however, is a defect in a court's jurisdiction, and a preponderance of the evidence is the burden for jurisdictional challenges under Rule 12(b)(1). *E.g., Wright v. United States*, 82 F.3d 419, 1996 WL 172119, at *4 (6th Cir. 1996) (table case) (citation omitted); *Bakshi v. Avis Budget Grp., Inc.*, No. 2:20-CV-10419, 2022 WL 1055455, at *2 (E.D. Mich. Jan. 28, 2022) (citations omitted), *report and recommendation adopted*, No. 20-10419, 2022 WL 704944 (E.D. Mich. Mar. 8, 2022); *Siedschlag v. United States*, 171 F. Supp. 2d 716, 718 (S.D. Ohio 2001) (citations omitted). Preponderance of the evidence also is the burden when a defendant removes a case from state court and needs to establish that the amount in controversy gives a court diversity jurisdiction. *See* 28 U.S.C. § 1446(c)(2)(B). Preponderance of the evidence thus is the most appropriate burden to apply to challenges to process or to service of process. *See Harris v. McDonald*, No. CV 3:21-1851, 2022 WL 1671117, at *2 (M.D. Pa. May 25, 2022) (citations omitted) (applying preponderance of the evidence standard); *Ganpat v. E. Pac. Shipping, PTE, LTD.*, 553 F. Supp. 3d 324, 329 (E.D. La. 2021) (citations omitted) (same); *iTalk Glob. Commc'ns, Inc. v. Hanya Star Ltd.*, No. 212CV03469SVWFFM, 2012 WL 12887555, at *1 (C.D. Cal. May 22, 2012) (citations omitted) (same); *see also Disability Support All. v. Billman*, No. CV 15-3649, 2016 WL 755620, at *2 (D. Minn. Feb. 25, 2016) (treating Rule 12(b)(5) motions initially like summary judgment motions but applying preponderance standard for trial or at an evidentiary hearing).

### III. Analysis

#### A. The alias summons satisfied the requirements of Rule 4(a) and (b).

"A summons must: (A) name the court and the parties; (B) be directed to the defendant; (C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff; (D) state the time within which the defendant must appear and defend; (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint; (F) be signed by the clerk; and (G) bear the court's seal." Fed. R. Civ. P. 4(a). The alias summons satisfied all of the requirements of Rule 4(a), and the Clerk of Court properly issued the summons under Rule 4(b). Rule 4 does not require that a summons contain a defendant's address at all. *See D.S. by & through C.S. v. Rochester City Sch. Dist.*, No. 6:19-CV-6528, 2020 WL 7028523, at *5 (W.D.N.Y. Nov. 30, 2020) (no Rule 4 requirement regarding defendant's address) (citations omitted); *Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 203 (E.D.N.Y. 2017) ("Put simply, to be compliant with Rule 4, the correct name of the defendant must appear on the summons."); *Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1093 (D. Kan. 2007) ("While Rule 4(a) requires that a summons be directed to defendant, it sets forth no requirement regarding defendant's address."). Without a requirement to list Frank's correct address in the summons, and given the proper service that the Court explains below, the discrepancy between the address for Frank listed in the alias summons and the address where Frank was served is, at most, a harmless error. *Cf. Oliver & Tate Enters., Inc. v. Foundations Worldwide, Inc.*, No. CV 13-01683, 2013 WL 4446827, at *7 (C.D. Cal. June 18, 2013) (where the defendants otherwise were properly served, an incorrect mailing address for a summons "was a minor and harmless error"); *Linden v. Lines*, No. 05-21622-CIV, 2006 WL 8431998, at *2 (S.D. Fla. Apr. 19, 2006) (where the proper agent for accepting service ultimately received the summons and complaint, "requiring [plaintiff] to serve the amended complaint again with a corrected summons

would have no substantive effect on this matter"). The Court thus recommends denying Frank's motion to dismiss under Rule 12(b)(4).

**B.      The preponderance of the evidence shows that Frank was properly served under Rule 4(e)(2)(B) at his only known domicile.**

Under Rule 4, Buck had the option of serving Frank by "leaving a copy of each [*i.e.*, the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). "Despite the length of time these words [dwelling or usual place of abode] have been a part of federal practice, the judicial decisions do not make clear precisely what they mean and the facts of a particular case often prove to be crucial." 4A Fed. Prac. & Proc. Civ. § 1096 (4th ed. and 2026 Supp.), *quoted in Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991) (addressing the case at hand "on the facts presented with a recognition of the realities of life in this the winter of the twentieth century"). Here, Buck has submitted several facts that weigh in favor of finding proper service. Frank has used the Sarasota County address to register to vote in Florida since 2010 (Doc. No. 50-2 at 2), consistent with Florida law requiring an "address of legal residence" on a voter registration application. *See* Fla. Stat. Ann. § 97.053(5)(a)(2), *cited in Am.'s Fams. United v. Stafford*, No. 16-04-6591-XXXX, 2004 WL 2294760, at *1 (Fla. Cir. Ct. Oct. 6, 2004) (address required on voter registration application). Frank's father has used the Sarasota County address in state court proceedings in which he has shown the capacity to represent himself. (Doc. No. 50-4 at 2.) *Cf. United States v. Flatline Concrete, LLC*, No. CV 22-827, 2024 WL 1340661, at *3 (M.D. La. Feb. 27, 2024) (address where defendant's father was served satisfied Rule 4(e)(2)(B) where, *inter alia*, defendant was served at that address previously for a state court matter), *report and recommendation adopted*, No. CV 22-827, 2024 WL 1335643 (M.D. La. Mar. 28, 2024). Frank used the Sarasota County address for at least one UCC statement in 2022 (Doc. No. 50-5 at 2) and

8

for at least one registration of a limited liability company (Doc. No. 50-6 at 2). *See Flatline*, 2024 WL 1340661, at *3 (defendant used the service address to register a limited liability company). Frank has not rebutted any of this proffered information or suggested that any of the submitted documentation is not authentic. The process server's decision to leave papers at the front door of the Sarasota County address, in Frank's father's presence after he refused to accept the papers, is a permissible way to leave papers under Rule 4(e)(2)(B). *Cf. Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1137 (9th Cir. 2009) (service under Rule 4(e)(1) and 4(e)(2) proper, where process server personally encountered defendant, defendant refused to accept the papers, and process server left the papers in defendant's presence); *Villanova v. Solow*, No. CIV. A. 97-6684, 1998 WL 643686, at *2 (E.D. Pa. Sept. 18, 1998) (service under Rule 4(e)(2) proper, where process server personally encountered defendant, defendant refused to open the door to accept the papers, and process server announced that he was putting the papers through the mail slot in the door and then did so); *Fed. Fin. Co. v. Longiotti*, 164 F.R.D. 419, 422 (E.D.N.C. 1996) (service of process proper, where process server personally encountered defendant's wife, wife refused to accept papers, and process server left papers on the doorstep in her presence).

Finally, while awareness of litigation does not override defective service, *see Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991), Frank's references to this case (Doc. No. 50-8)—including his awareness (Doc. No. 45 at 1) that the process server's affirmation of service is Document No. 44 in the docket—confirm that he has actual notice of this litigation against him. *See Rovinski v. Rowe*, 131 F.2d 687, 689 (6th Cir. 1942) (rules governing service of process "should be construed liberally, to effectuate service where actual notice of suit has been received by the defendant").

In sum, Buck has submitted enough evidence to persuade the Court that the Sarasota County address is the address where both Frank and his father have established a domicile and that Frank and his father use when interacting with government agencies. *Cf. PopSockets, LLC v. Hueffner*, No. 17-CV-827, 2018 WL 4568823, at \*6 (E.D. Wis. Sept. 24, 2018) (defendant domiciled at the Wisconsin address that he used in another federal court and for his driver's license). The Court thus finds, by a preponderance of the evidence, that the Sarasota County address is Frank's "dwelling or usual place of abode" for purposes of Rule 4(e)(2)(B) and that Frank's father was "someone of suitable age and discretion" who resided there. Buck thus completed proper service of the alias summons and of the complaint on Frank on November 5, 2025. The Court accordingly recommends denying Frank's motion to dismiss under Rule 12(b)(5).

### C. Buck's motion for alternative service is moot because alternative service no longer is necessary.

Buck filed his pending motion for alternative service before his process server completed service on Frank's father. If Judge Richardson agrees that Frank was properly served under Rule 4(e)(2)(B) then the motion for alternative service will become unnecessary upon adoption of this report and recommendation. The Court thus recommends denying the motion for alternative service as moot.

## IV. Recommendation

For all of the foregoing reasons, the Court respectfully recommends that Frank's motion to dismiss (Doc. Nos. 45, 48) be DENIED and that Buck's motion for alternative service (Doc. No. 43) be DENIED AS MOOT.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided.

10

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of March, 2026.

LUKE A. EVANS
United States Magistrate Judge