# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| JON MINADEO II, Ryan Scott McCann, Nicholas Alan Bysheim, Louie Dunn, Colby Alexander Frank, Zane Fenton Morris, and John Does 1-10 <br><br> Counter-Claimaint Plaintiffs, <br><br> v. <br><br> **Deago Buck**, an individual; <br><br> **Shandar, LLC**, d/b/a **Show Pony**, formerly known as **Johnny Cash's Bar & BBQ** a Limited Liability Company organized under the laws of the State of Tennessee; <br><br> **Southern Poverty Law Center Inc,** a 501(c)(3) incorporated organized under the laws of the State of Alabama; <br><br> Defendants. | CASE 3:25-CV-00677 <br><br> **FED.R.CIV.P 13(A) AND FED.R.CIV.P 13(H) COUNTER-CLAIM** <br><br> **JURY TRIAL DEMANDED** <br><br> (1) ASSAULT & BATTERY <br> (2) NEGLIGENT HIRING & NEGLIGENT SUPERVISION LEADING TO PERSONAL INJURY <br> (3) FIRST AMENDMENT RETALIATION |

Plaintiffs JON MINADEO II, Ryan Scott McCann, Nicholas Alan Bysheim, Louie Dunn, Colby Alexander Frank, Zane Fenton Morris, and John Does 1-10, led by Mr. Frank as an unincorporated group of individuals collectively seeking to advance "Equal Rights for American Whites," *see NAACP v. Button, 371 U.S. 415 (1963)* hereby complain and allege as follows:

### INTRODUCTION

1. This is a case of first impression due to the political activities of Plaintiffs being attacked as a result of the behaviors and actions of Defendants Buck and his employer, Shandar LLC.

2. The freedoms to speak and to publish are guaranteed by our Nation's founding document. U.S. CONST. amend. I; *Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931).

3. Censorship, on the other hand, is the antithesis of free speech. It is antithetical not only to the freedom of speech guaranteed by the First Amendment, but also to a free society generally. "Censorship reflects a society's lack of confidence in itself. It is a hallmark of an authoritarian regime." *Ginzberg v. United States*, 383 U.S. 463 (1966) (Potter, J., dissenting).

4. For centuries, the U.S. Supreme Court has held steadfastly to the principle that the remedy to unwanted or disagreeable speech is not censorship, but rather, more speech. *See, e.g., Whitney v. California*, 274 U.S. 357 (1927) (Brandeis, J., concurring) ("If there be time to expose through discussion [] falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence.").

5. On July 14, 2024, Plaintiffs engaged in a First Amendment protected demonstration on public sidewalks in Nashville, Tennessee. As set forth below, Defendant Deago Buck disagreed with the content and manner of Plaintiffs' political presentation on that date. Rather than exercise his right to engage in protected counter-speech under the United States Constitution, Defendant Buck chose a retaliatory path of violent aggression toward Plaintiff and others.

6. As a result of Defendant Buck's unlawful conduct, Plaintiffs were assaulted and suffered multiple injuries, some leaving permanent scarring. Defendant Buck also facilitated the manufacturing of a false narrative whereby Mr. Minadeo's name and image were shared by multiple television and electronic news outlets in association with accusations that Plaintiffs had initiated a confrontation with the Defendant. As the facts emphatically set forth below, these allegations are false. Video footage of the events of July 14, 2024—as well as the frivolous lawsuit filed by Buck—demonstrate that Defendant Buck was the aggressor in the subject confrontation.

7.      Meanwhile, Defendant Buck's employer, Cash's Bar & BBQ ("**Cash's Bar**"), which has currently rebranded to Show Pony sat idly by while Defendant Buck left his post as an inside bartender, passed multiple security guards employed at the establishment, announced his intent to commit an assault no less than three times verbally, followed the demonstrators no less than 40 feet, and proceeded to achieve his stated objective of inflicting bodily injury on the Plaintiffs.

8.      In bringing this action, Plaintiffs seek to recover damages for Defendant Buck's assault and battery, as well as Defendant Shandar LLC d/b/a/ Cash's Bar & BBQ d/b/a Show Pony's negligent hiring and supervision of Defendant Buck.

9.      Plaintiff also seeks to vindicate his Constitutionally protected rights of speech, demonstration, assembly, and the displaying of political insignia without fear of being assaulted for his political beliefs or silenced into submission. By filing this Complaint, Plaintiffs seek to hold accountable both the assailant and the business leadership who employed and enabled that assailant to inflict permanent injuries upon Mr. Minadeo, temporary injuries upon Mr. Bysheim, and has now launched a clearly frivolous suit against all other counter-claim Plaintiffs with impunity.

## **PARTIES**

10.      Plaintiff **JON EUGENE MINADEO** is a natural born citizen of the United States residing on the territory of the STATE OF FLORIDA.

11.      Plaintiff **NICHOLAS ALLEN BYSHEIM** is a natural born citizen of the United States residing on the territory of the STATE OF MARYLAND.

12.     Plaintiff **ZANE FENTON MORRIS** is a natural born citizen of the United States residing on the territory of the STATE OF FLORIDA.

13.     Plaintiff **COLBY-ALEXANDER: FRANK** is a natural-living man residing on the territory of Florida.

14.     Plaintiff **RYAN SCOTT MCCANN** is a natural born citizen of Canada residing within the confines of the Davidson County Jail.

15.     Plaintiff **LOUIE DUNN** is a natural born citizen of the United States residing in an unknown location.

16.     Defendant **DEAGO BUCK** is an individual domiciled within the territory of the STATE OF TENNESEE. On information and belief, Defendant Buck is located at 1304 Shady Lawn Dive, Clarksville, TN 37043.

17.     Defendant **Shandar LLC** d/b/a **JOHNNY CASH'S BAR & BBQ** now rebranded to **Show Pony**, ("Show Pony") is a Limited Liability Company organized under the laws of the STATE OF TENNESSEE. Defendant Shandar LLC is a self-described "real estate development and hospitality company that owns and operates some of the most popular establishments in Nashville," including Johnny Cash's Bar and BBQ. Show Pony, formerly known as Cash's Bar and BBQ is located at 121 3rd Avenue South, Nashville, Tennessee 37201. On information and belief, Defendant Shandar LLC maintains its principal place of business at 119 3rd Avenue South, Nashville, Tennessee 37201 and may be served with process at that location.

18.     Defendant **Southern Poverty Law Center Inc,** ("SPLC") is a tax exempt corporation 501(c)(3) organized under the laws of the internal revenue code. It is incorporated within the STATE OF ALABAMA. On information and belief, Defendant SPLC is located at 400

Washington Ave., Montgomery, AL 36104 with a mailing address of PO Box 548, Montgomery, AL 36104.

**JURISDICTION**

19.     As he is already a party to this action, the Court has jurisdiction over Defendant Buck.

20.     Because the facts of this counter-claim are so intimately related to the action in its entirety, and the action itself is being used as a method of deterring persons of ordinary firmness from excersising their First Amendment rights, the Court, pursuant to Fed.R.Civ.P 19 must join Shandar LLC and Southern Poverty Law Center Inc. as parties to this action.

**STATEMENT OF FACTS**

21.     On July 14, 2024, Plaintiffs attended a political demonstration in the Entertainment District of Downtown Nashville, Tennessee. At all times, Plaintiffs were acting consistent with their rights to free speech and assembly in a public forum guaranteed by the First Amendment to the United States Constitution.

22.     Defendant Shandar LLC doing business as Cash's Bar & BBQ now rebranded to Show Pony had access to public records indicating that Defendant Buck had a criminal history before the events stated in this complaint.[1] Defendant Shandar LLC doing business as Cash's Bar & BBQ now doing business as Show Pony, acting negligently or in conscious disregard of this fact, nonetheless hired Defendant Buck. This was a function of inadequate background checks or negligence. On information and belief, Buck's records – and other pending charges against Mr.

---

[1] On information and belief, Defendant Buck had a prior criminal charge at the time of his hiring by Shandar LLC. The public records indicating Buck's preexisting criminal charges have apparently been expunged from the County Court's records. Buck was also subsequently charged as a result of the events stated in this complaint, as well as having had two warrants signed against him based on testimony given to the Honorable J. Daigle. Buck's current charges arising out of the events set forth in this complaint have been dismissed *nolle prosequi*, and his warrants from the Honorable Judge Daigle have likewise disappeared from public record.

Buck – have now been either sealed, expunged, or *nolle prosequi* by local governmental agents in a political attempt to shield Defendant Buck's criminal injustices against Plaintiff and portray him as a victim.

23. On the afternoon of July 14, 2024, Defendant Buck was working a double shift at Cash's Bar when Plaintiff and related demonstrators passed on the 3rd Avenue sidewalk near the establishment.

24. Defendant Buck provided the following recollection of events: "I was at work, I was on the clock… and just [sic] their demeanor with people, they were holding Nazi flags very high, and just being very aggressive." Buck further sought to justify his actions with reference to Plaintiff's political speech: "don't just stand by and let it happen."

25. As the Plaintiffs were walking away from Cash's Bar now known as Show Pony, Defendant Buck exited his place of employment to observe the demonstrators from the doorway. While standing at a place of ingress and egress of the establishment, Defendant Buck stood beside no fewer than two security personnel employed by Cash's Bar now known as Show Pony. The security officials, acting as agents of Shandar LLC, did not advise Buck to return inside, nor did they stop him from exiting the establishment. At this time, the demonstrators were in front of Cash's Bar & Barbeque now known as Show Pony, collectively walking away southbound.

26. At this time, not a single Plaintiff had any idea who Deago Buck was, any relationship to Deago Buck, nor any knowledge of his political affiliations or opinions.

27. Defendant Buck then began pursuing Mr. Nicholas Allen Bysheim, a demonstrator. Mr. Bysheim was walking Southbound on 3rd Avenue approximately 40 feet from the place of ingress and egress of Cash's Bar now known as Show Pony. Defendant Buck began

6

pursuing Mr. Bysheim from behind, while fulminating: "Fight me. Fight me. Fight me." Security personnel employed by Shandar LLC took no steps to intervene in Buck's hunt for confrontation.

28.   Defendant Buck engaged in this antagonistic conduct despite his understanding at the time, and his later acknowledgement of the fact that "[a] number of police officers, cognizant of free speech issues, were close by watching the group's actions."[2]

29.   Defendant Buck then initiated a physical confrontation with Mr. Bysheim *via* closed-fist punching Mr. Bysheim in the face. Video footage shows that Defendant Buck threw the first punch, despite there being no prior physical contact by Bysheim against Buck.

30.   In an interview with ABC News 2, Defendant Buck stated "eventually, I was hit with a flagpole, and then I had to retaliate." But this portrayal of events is patently false, as video footage shows that Defendant Buck first initiated contact by punching Mr. Bysheim in the face.

31.   After his cheap shot on an unsuspecting Mr. Bysheim, Deago Buck proceeded to push his way through the other southbound demonstrators—and throwing multiple punches at them—toward Cash's Bar and the protection of the Cash's Bar now known as Show Pony security personnel.

32.   In an attempt to avoid others from being struck by Buck, Plaintiff Minadeo utilized his wrestling training and engaged Buck in a restrictive position where Buck could no longer be combative. Plaintiff Minadeo performed this restrictive action without striking Defendant Buck. Because Plaintiff Minadeo was aware of significant law enforcement presence around the demonstrators that day, it was his intent to restrain Buck and turn him over to the

---

[2] *See* Buck, Deago. "Stand with Deago Buck Against Hate." GoFundMe.com (Jul. 16, 2024) *available at* <https://www.gofundme.com/f/stand-with-deago-buck-against-hate>.

authorities. In the ensuing commotion, Defendant Buck broke free of the restraint and appeared to re-engage others around him.

33.     Defendant Buck was then recorded assaulting an unknown man wearing a red shirt.

34.     After walking away from the attempt to secure Buck, Plaintiff noticed a sharp pain in his left arm. Moments after the Nashville Police arrived to break up the scene and begin their investigation, Plaintiff realized Buck had bitten a large chunk out of his left arm.

35.     Plaintiff Minadeo was treated on scene for his injuries.

36.     Plaintiff Bysheim was treated on scene for his injuries.

37.     Plaintiff Minadeo proceeded to offer his testimony before the Honorable Jeff Daigle of the Metropolitan General Sessions Court where an arrest warrant was signed to bring Mr. Buck to justice for his assault and battery.

38.     Plaintiff Bysheim proceeded to offer his testimony before the Honorable Jeff Daigle of the Metropolitan General Sessions Court where an arrest warrant was signed to bring Mr. Buck to justice for his assault and battery.

39.     All businesses across the United States owe a duty of care to the general public to ensure that their employees do not exit the premises and punch people in the face.

40.     Because of the political demonstration, security staff employed by businesses owed Plaintiff a higher duty of care.

41. After receiving an initial demand letter (**Exhibit A**) from Plaintiff Minadeo's authorized representative, Defendant Shandar LLC d/b/a Cash's Bar & BBQ publicly announced its closure and rebranding of Cash's Bar & BBQ to Show Pony. (**Exhibit B**)

42. After observing Mr. Minadeo's attempt to extract justice from Defendants Buck and Shandar LLC in the state Courts, via some strange and malevolent inversion of common sense, the Southern Poverty Law Center Inc decided to launch Case 3:25-cv-00677 against Plaintiffs arising from these above stated facts.

43. The complaint in Case 3:25-cv-00677 admits that Deago Buck initiated the physical confrontation.

44. Case 3:25-cv-00677 is an inversion of common sense, somehow making the victims of Deago's attack the "conspirators," and is being used as a burden shifting weapon to further silence and opress White persons from excersising their own constitutional rights. The lawsuit is being used to instill fear into Whites who would dare speak about racial issues, to stifle and deny access to governmental meetings to speak to and offer instructions to their civil servants, and to generally dissuade White persons from enjoying their Constitutional rights for fear of litigious punishment (the process is the punishment). The lawsuit takes advantage of Deago Buck's lack of impulse control and uses him as a litigation "suicide-bomber," to achieve the objective of supressing the Constitutional rights of the counter-Plaintiffs.

45. Case 3:25-cv-00677 would deter a person of ordinary firmness from excersising a clearly established constitutional right to speak, assemble, and petition in support of White advocacy.

46.     This lawsuit is not only a malevolent inversion of logic, but it has also exhausted an extreme amount of monetary resources, time, reputational harm, and caused severe emotional distress to these counter-Plaintiffs.

47.     Mr. Frank, acting on behalf of all counter-Plaintiffs as a civil rights advocate for White people, has already spent at the time of the drafting of this counter-claim, over 500 hours of time—and counting—in consulting counter-Plaintiffs, researching and verifying facts, researching and verifying laws, and drafting the legal arguments necessary to defend himself from such a bullshit prosecution.

### CLAIMS FOR RELIEF

**DEFENDANT DEAGO BUCK:**

**Count 1:** <u>Assault & Battery.</u> Defendant Deago Buck publicized in a press interview his intent to "stand up," to Plaintiff's First Amendment demonstration.[3] Defendant Buck did this by exiting his place of employment and proceeding to punch a demonstrator, Mr. Nicholas Bysheim, in the face. Defendant Buck's decision to exit his place of employment and pursue violence required a premeditated *mens rea* and created an atmosphere of physical hostility. Defendant Buck's decision to push and shove his way through multiple demonstrators in an attempt to escape from his cowardly act is further evidence of his malintent. After Plaintiff Minadeo decided to restrain Defendant Buck with the intent to hand him over to Police, Defendant Buck used his teeth and jaws as a weapon to bite out a chunk of flesh from Minadeo's arm, taking some of Plaintiff's skin. Plaintiff now has permanent scarring as a result of this injury. For injuries sustained by Defendant Buck's assault and battery against Plaintiff, Plaintiff Minadeo

---

[3]*See* Felony Civil Rights Intimidation, Tennessee Code §§ 39-17-309.

prays this Court award him a judgment for actual damages of **$75,000** against Defendant Deago Buck.

**Count 2:** <u>Assault & Battery.</u> Defendant Deago Buck publicized in a press interview his intent to "stand up," to Plaintiff's First Amendment demonstration. Defendant Buck did this by exiting his place of employment and proceeding to punch Plaintiff Nicholas Bysheim in the face. Defendant Buck's decision to exit his place of employment and pursue violence required a premeditated *mens rea* and created an atmosphere of physical hostility. Defendant Buck's decision to push and shove his way through multiple demonstrators in an attempt to escape from his cowardly act is further evidence of his malintent. For injuries sustained by Defendant Buck's assault and battery, Plaintiff Bysheim prays this Court award him a judgment for actual damages of **$75,000** against Defendant Deago Buck.

**DEFENDANT SHANDAR LLC:**

**Count 3:** <u>Negligent hiring & supervision leading to personal injury.</u> In his press interview, Defendant and assailant Deago Buck admitted to both being an agent of the above company and acting in the course and scope of his employment immediately preceding the events set forth herein. The facts make clear that there were multiple individuals and agents who could have stopped Defendant Buck's assault on Plaintiff. Defendant Shandar LLC owed Plaintiffs (and the entire general public for that matter) a duty of care to ensure that their employees did not exit the premises and begin punching people in the face. Because of the political demonstration occurring on the public easement, Defendant Shandar LLC owed Plaintiffs a much higher duty of care to ensure that none of their employees did something stupid inside of their premises or on the public easement thereto. *First*, Defendant Buck had to make the decision to exit the bar. *Second*, this is a decision that could have been easily stopped by his

direct bar manager. *Third*, Defendant Buck had to exit the building. Cash's Bar & Barbeque employed multiple bouncers at the entrance to the establishment. On the date in question there were at least two front door security personnel, possibly more. All of these men failed to stop Defendant Buck from exiting the establishment when it was abundantly clear that he had no reason to do so—and that there was a controversial group of political demonstrators walking southbound in front of the establishment. *Fourth*, none of the employed security personnel followed Defendant Buck as he walked approximately 40 feet Southbound on 3rd Avenue to confront Mr. Bysheim, while communicating his intent to commit bodily injury. *Fifth*, Cash's Bar & Barbeque knowingly hired Defendant Buck with an existing criminal history. And finally, *sixth*, after the events set out in this complaint, Defendant Shandar LLC entertainment has maintained or recreated their employee relationship with Defendant Buck. Defendant's inability to control their agent, Deago Buck, was the proximate cause of Plaintiff receiving his permanent injuries. Due to the numerous failures of multiple agents of the Defendant, and due to the egregious permanent scarring of Plaintiff Minadeo's arm, Plaintiff Prays this Court award him a judgment of **$500,000** against Defendant Shandar LLC.

**Count 4:** <u>Negligent hiring & supervision leading to personal injury.</u> In his press interview, Defendant and assailant Deago Buck admitted to both being an agent of the above company and acting in the course and scope of his employment immediately preceding the events set forth herein. The facts make clear that there were multiple individuals and agents who could have stopped Defendant Buck's assault on Plaintiff. *First*, Defendant Buck had to make the decision to exit the bar. This is a decision that could have been easily stopped by his direct bar manager. *Second*, Defendant Buck had to exit the building. Cash's Bar & Barbeque employs bouncers at the entrance to the establishment. On the date in question there were at least two

front door security personnel, possibly more. All of these men failed to stop Defendant Buck from exiting the establishment when it was abundantly clear that he had no reason to do so – and that there was a controversial group of political demonstrators walking southbound in front of the establishment. *Third*, none of the employed security personnel followed Defendant Buck as he walked approximately 40 feet Southbound on 3rd Avenue to confront Plaintiff, while communicating his intent to commit bodily injury. *Fourth*, Cash's Bar & Barbeque knowingly hired Defendant Buck with an existing criminal history. *Fifth*, even after the events set out in this complaint, Defendant Icon entertainment has maintained their employee relationship with Defendant Buck. Due to the numerous failures of multiple agents of the Defendant, and due to the egregious nature of Feloniously motivated Civil Rights Intimidation, Plaintiff Bysheim Prays this Court award him **$125,000** against Defendant Shandar LLC.

**DEFENDANT SOUTHERN POVERTY LAW CENTER INC:**

**Count 5:** <u>First Amendment Retaliation.</u> All counter-Plaintiffs in this counterclaim were engaged in clearly protected First Amendment activities. Defendant Southern Poverty Law Center Inc, took the adverse action of launching Case 3:25-cv-00677 in this Court with the intent of deterring White persons of ordinary firmness from excersising their clearly established Constitutional rights. The protected conduct of the counter-Plaintiffs was the motivating factor in Defendant SPLC's decision to launch Case 3:25-cv-00677 as a method to further endorse, empower, or otherwise sanction violent attacks on First Amendment activists for opinions that the SPLC disagrees with. Due to the egregious nature of their inversion of logic, and the clearly evident motivation to supress First Amendment activities of White persons, Plaintiffs Minadeo, Bysheim, McCann, Dunn, Morris, and Frank pray this Court award them **each** a judgment of **$100,000** against Defendant Southern Poverty Law Center Inc.

**WHEREFORE** Counter-Plaintiffs demand judgment against Defendants Buck, Shandar LLC, and Southern Poverty Law Center Inc, for actual, nominal, and punitive damages, and declaratory relief explicitly barring attackers from becoming Plaintiffs in civil rights actions where they themselves initiate the physical confrontation.

## DEMAND FOR TRIAL BY JURY

All Counter-Plaintiffs demand a trial by jury of all issues so triable in this case.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy hereof has been furnished by electronic mail to all opposing counsel of record who have entered an appearance.

<u>/s/ Colby Alexander Frank</u>
Colby Alexander Frank
*Propria Persona &*
*Beneficiary*
P.O. Box 86
Destin, Florida 32540
(+1) 941.275.5712
dariusthecarryus@gmail.com
UCC 1-308: *Without*
*Prejudice*