UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

Deago Buck,

     Plaintiff,

v.

Goyim Defense League, Jon Minadeo II, Ryan Scott McCann, Nicholas Alan Bysheim, Louie Dunn, Colby Alexander Frank, Zane Fenton Morris, and John Does 1-10,

     Defendants.

Case No. 3:25-cv-00677

Judge Eli Richardson
Magistrate Judge Luke A. Evans

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT FRANK'S MOTION FOR SANCTIONS PURSUANT TO RULE 11(b)(1)**

The court should deny Defendant Frank's motion for sanctions because he cannot establish that the Complaint was filed for an "improper purpose," that it was not "warranted by existing law," or that it lacks "evidentiary support." Fed. R. Civ. P. 11(b). Thus, Defendant's motion must be denied.

**I.    FACTUAL BACKGROUND**

**A.    The Complaint**

Defendant Frank is accused in Count One of the Complaint with violating 42 U.S.C. § 1985(3) by conspiring with his co-defendants to engage in racially motivated violence and interference with equal use and access to places of public accommodation that targeted Black and Jewish people in Nashville in July 2024. As a proximate cause of Defendants' conspiracy, Plaintiff suffered physical and emotional injuries and Plaintiff was deprived of his constitutional right to be

free from racial violence and his right to access and use public accommodations. As outlined below, these claims are fully supported by both the facts and the law.

Defendants, including Defendant Frank, are members of a dangerous hate group called the Goyim Defense League ("GDL"). (Doc. No. 1 at ¶¶ 17-23). GDL is comprised of white supremacists and neo-Nazis united by goals that include "extermination" of the Jewish race, and ridding all countries, except those in Africa, of Black people; goals that often include criminal activities and violence. (Doc. No. 1. at ¶¶ 1, 14, 25, 26, 32-34, 38-41). Their conspiracy is reflected in numerous statements and online posts. (*Id.* at ¶¶ 34, 40, 42, 46, and 48). Defendants also took overt actions in support of their conspiracy by, among other things, planning and traveling to Nashville in July 2024 to harass and terrorize Black and Jewish people in Nashville in various public places. (*Id*. at ¶¶ 1, 4-7, 43, 48-50). These actions included but were not limited to, harassing, intimidating, and eventually attacking a man they perceived to be Jewish in a parking lot,[1] (*id*. at ¶¶ 51-70); targeting and intimidating young Black children who were using the public sidewalks and roadways, (*id*. at ¶¶ 71-75); and targeting a rabbi, a Black council person, and numerous citizens supporting Black and Jewish people at a public meeting. (*Id*. at ¶¶ 97-104). Defendant Frank was personally involved in the parking lot incident, and he publicly celebrated their antisemitic conduct afterward with other GDL members. (*Id*. at ¶¶ 51, 54, 58, 59, 67, Images 3-5). During Defendants' two week harassment campaign, which they pejoratively called the "Name the Nose Tour," there were reports that Defendants attacked "people who were perceived as Black, Jewish or their supporters for harassment," and were "[d]irectly provoking, intimidating and harassing people who were perceived as Black, Jewish or their supporters by yelling in their

---

[1] That this victim of Defendants' conspiracy, as well as other victims referenced in the Complaint, are not plaintiffs is irrelevant to determining whether a conspiracy has been sufficiently alleged and whether overt acts were taken in furtherance of that conspiracy.

faces"; "[r]unning up to people who were perceived as Black, Jewish or their supporters and pretending that they were going to hit them" and "[t]hreatening to engage in violence against people who were perceived as Black, Jewish or their supporters." (*Id*. at ¶ 105). Defendants' actions in Nashville resulted in multiple criminal charges and several convictions for assault and civil rights intimidation. (*Id*. at ¶ 43).[2] The overt acts described above were taken in furtherance of Defendants' conspiracy to deprive their victims of their constitutional rights to be free from racially-motivated[3] violence and to the equal use and access to places of public accommodation.

Plaintiff was one of the Defendants' victims. On July 14, 2024, Plaintiff encountered a "contingent of upwards of a dozen or more GDL members" who were "accosting passersby, marching through downtown chanting '*Sieg Heil*,' 'white fucking power,' and 'fuck the Jews' and performing the Nazi salute." (*Id*. at ¶ 77). As they passed by Plaintiff's place of employment, "GDL members used antisemitic and racially charged language in a menacing manner." (*Id*. at ¶ 79). This included one GDL member, Nicholas Alan Bysheim, calling "Plaintiff, who identifies

---

[2] Since the Complaint was filed, convictions and an additional indictment have occurred stemming from the activities described in the Complaint, including for assaults and felony civil rights intimidation. *See June 24, 2025 – Neo-Nazi Found Guilty*, Office of the District Attorney of Nashville (June 26, 2025), https://da.nashville.gov/june-24-2025-neo-nazi-found-guilty/; Craig Shoup, *Antisemitic Group Member Pleads Guilty to July 2024 Nashville Assault Hours Before Trial*, NASHVILLE TENNESSEAN (July 28, 2025), http://tennessean.com/story/news/crime/2025/07/28/hate-group-member-admits-guilt-in-nashville-assault-hours-before-trial/85407453007/; *Second Associate of Antisemitic Hate Group Indicted on Civil Rights Intimidation and Assault Charges*, Metropolitan Police Department of Nashville (July 17, 2025), https://www.nashville.gov/departments/police/news/second-associate-antisemitic-hate-group-indicted-civil-rights-intimidation-and-assault-charges.

[3] Discrimination against individuals of Jewish ancestry is recognized as racial discrimination under various civil rights laws. *See*, *e.g. Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (observing that in interpreting the Reconstruction Era civil rights laws racial discrimination is that which singles out "identifiable classes of persons ... solely because of their ancestry or ethnic characteristics."); *Browder v. Tipton*, 630 F.2d 1149, 1152 (6th Cir. 1980) ("Among the legitimate § 1985(3) classes we have included . . . members of the Jewish faith, *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973)); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1065 (6th Cir. 1973) (holding that "[u]pon remand the plaintiff will be permitted to amend for the purpose of asserting jurisdiction under 42 U.S.C. § 1985(3)" because the complaint satisfies requirements of § 1985(3) "in that it charges that the collusion of the defendants was for the purpose of depriving plaintiff of equal employment opportunities" because he is a member of the Jewish faith and "that the defendants acted in furtherance of their agreement and the result was injury to the plaintiff."); *Emanuel v. Barry*, 724 F. Supp. 1096, 1101 (E.D.N.Y. 1989) (finding "anti-Semitic animus is actionable under section 1985(3)") (citing *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987))

as biracial and whose father is Black . . . a 'n****r baby.'" (*Id*. at ¶¶ 79, 80). "The insult that Bysheim used was so aggressive that Plaintiff believed himself in threat of imminent harm and instinctively responded by striking Bysheim in order to get away." (*Id*. at ¶ 83). After striking Defendant Bysheim in self-defense, Plaintiff immediately retreated on a public sidewalk. (*Id*. at ¶¶ 83, 87). As this occurred, GDL's leader Jon Minadeo shouted, "GET HIM" and, in response, other GDL members attacked Plaintiff. (*Id*. at ¶¶ 84-86, 88). GDL members "slammed him into a parked vehicle, and attempted to punch and choke him"; "jumped on Plaintiff's back, put him in a chokehold, and attempted to gouge out his eyes"; "kicked and punched Plaintiff; and "struck Plaintiff with the pole of [a] swastika flag in the face and the ribs[.]" (*Id*. at ¶¶ 89-92). "Plaintiff was surrounded and terrified for his life. He eventually broke free, only by biting Minadeo and then pushing him off. Plaintiff again retreated and was chased into moving traffic." (*Id*. at ¶ 93). "As a result of the attack, Plaintiff lost sleep, suffered multiple contusions and experienced significant pain, suffering, anxiety and emotional distress, and avoided downtown Nashville out of fear for several months afterward." (*Id*. at ¶ 96).

Defendants documented their conspiracy and many of these overt acts on the internet by streaming and publishing videos of their intimidation, threats, and harassment tactics in Nashville, including the incident against Plaintiff. (*Id*. at ¶¶ 6, 16, 46-47, 69, and 76). After the violent incident against Plaintiff, Defendants doubled down on and continued their conspiracy by doxing Plaintiff and his family on the internet because of their race,[4] (*id*. at ¶ 106), and intimidated and otherwise threatened Plaintiff by encouraging GDL members or associates to "'jump' Plaintiff after his work shifts, to 'curb stomp,' 'beat,' and 'repeatedly' shoot him." (*Id*. at ¶ 7).

---

[4] Doxing is the malicious publishing of a person's personal information on the internet for the purposes of bringing about "retribution, harassment or humiliation." *See Vangheluwe v. Got News, LLC*, 365 F.Supp.3d 850, 858-59 (E.D. Mich. 2019) (explaining how doxing works).

## B. The Court's Denial of Co-Defendants' Motions to Dismiss

Defendants Goyim Defense League, Jon Minadeo, Ryan McCann, Nicholas Bysheim, and Zane Morris moved to dismiss Count One of the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 22).[5] Those Defendants did not challenge the factual sufficiency of the allegations. Instead, those Defendants argued that neither a conspiracy to engage in racially-motivated violence nor a conspiracy to deprive a person of his right to use and access public amenities and places of public accommodations are rights that may be remedied under § 1985(3). (Doc. No. 23).[6] Plaintiff filed a response in opposition to Defendants' motions. (Doc. No. 29).[7]

The Court understood the Defendants to be arguing "that Plaintiff has failed to plead the second and fourth elements of a Section 1985(3) claim[.]" (Doc. No. 46 at 19). Specifically, that Plaintiff "failed to plead that the conspiracy at issue here had the 'purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws'" and that Plaintiff "failed to plead an 'injur[y] in his person or property or depriv[ation] of any right or privilege of a citizen of the United States.'" (*Id.* (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). After considering the parties' arguments and taking all the factual allegations in the Complaint as true, as the law requires,[8] the Court denied Defendants' motions to dismiss. (*Id.* at 2, 35).

The Court "conclude[d] that there is a Thirteenth Amendment right to be free from racial

---

[5] Defendants also sought dismissal of Count Two (Failure to Prevent Interference with Civil Rights Under the Klu Klux Klan Act of 1871, 42 U.S.C. § 1986) pursuant to Fed. R. Civ. P. 12(b)(6), and a corresponding dismissal of Plaintiff's state law claims pursuant to Fed. R. Civ. P. 12(b)(1) in the event that the federal claims were dismissed. (Doc. No. 22).

[6] Defendant Louie Dunn later filed a motion asserting the same arguments. (Doc. No. 28). Defendant Frank did not join either motion.

[7] Defendants also filed a reply (Doc. No. 30), and Plaintiff filed a sur-reply (Doc. No. 36).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

violence, and that Section 1985(3) may be used to vindicate that right." (Doc. No. 46 at 27). The Court also found "that there is a right to access public accommodations rooted in the Thirteenth Amendment and that Section 1985(3) may be used to vindicate that right against private conspiracies." (*Id*. at 31). Furthermore, the Court disagreed with the Defendants' argument that the Complaint "never really pleads a denial of said [public] accommodation." (*Id*. (quoting Doc. No. 30 at 1)). The Court found

> Plaintiff has pled a deprivation of his right to use public accommodations or access public amenities in two ways. First, Plaintiff has pled such a deprivation via his allegations concerning the alleged racially motivated assault against Plaintiff on a public sidewalk and street. (Doc. No. 1 at ¶¶ 78-95). Second, and alternatively, Plaintiff has plausibly alleged such a deprivation through his allegations concerning Plaintiff's continued avoidance of "downtown Nashville [and the public accommodations and amenities therein] out of fear for several months" after the attack on Plaintiff. (Id. at ¶ 96).

(*Id*. at 31-32).

In sum, the Court found that "Plaintiff has a right to be free from racial violence and a right to equal use and access to public amenities and places of public accommodations." (*Id*. at 32). The Court determined that Plaintiff sufficiently alleged "a conspiracy with the purpose of depriving him of the right to be free from racial violence and of depriving him of the right to equal access to public accommodations, such as to satisfy the second element of a Section 1985(3) claim" and "that as a result of that conspiracy he has suffered a deprivation of a right to be free from racial violence and deprivation of his right to equal access to public accommodations and amenities such as to satisfy the fourth element of a Section 1985(3) claim[.]" (*Id*. at 32-33). As such, the Court denied Defendants' motions with respect to Count One. (*Id*. at 33).[9]

---

[9] The Court also denied Defendants' motions to dismiss Count Two and the state law claims.

## II.    THE LEGAL STANDARD FOR RULE 11 SANCTIONS

### A.    The Prongs of Rule 11

Pursuant to Rule 11, when an attorney presents the court with a signed pleading that attorney

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed. R. Civ. P. 11(b). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The prongs of Rule 11(b) are discussed in more detail below. In summary, (1) a pleading is for an "improper purpose" if it is filed in bad faith; (2) a claim is not "warranted by existing law" if it is a frivolous legal contention; and (3) a factual contention does not have "evidentiary support" if the attorney knows or reasonably should have known that it is false or wholly unsupported.

### B.    Standard of Review

"In this Circuit, the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was 'reasonable under the circumstances.'" *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)). The Sixth Circuit has recognized on "numerous occasions" that

> assessing whether conduct is "reasonable under the circumstances" requires the district court to analyze counsel's conduct as it appeared at the time counsel acted. "Although a district court is given wide discretion in deciding whether counsel have acted reasonably under the circumstances, '[t]he court is expected to avoid using

the wisdom of hindsight and should test [counsel]'s conduct by inquiring what was reasonable to believe at the time [counsel acted].'"

*Id*. at 530 (quoting *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.,* 815 F.2d 391, 401 (6th Cir. 1987)). The court must assess the reasonableness of counsel's conduct objectively. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014).

Furthermore, the Sixth Circuit has admonished district courts to proceed with caution before granting a Rule 11 motion for sanctions at the pleading stage of the case.

> As a general proposition, a district court should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when . . . there is nothing before the court, save the bare allegations of the complaint. . . . At the pleading stage in the litigation, ordinarily there is little or no evidence before the court at all, and such facts as are alleged, must be interpreted in favor of the nonmovant. While a party is bound by Rule 11 to refrain from filing a complaint "for any improper purpose," from making claims "[un]warranted by existing law," or from making "allegations and other factual contentions [without] evidentiary support," *see* Fed.R.Civ.P. 11(b)(1)-(3), making those determinations is difficult when there is nothing before the court except the challenged complaint.

*Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003).

Ultimately, "Rule [11] must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Id*. at 594-95 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). And district courts must keep in mind that "Rule 11 'is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.'" *Id*. at 595 (quoting *McGhee v. Sanilac County,* 934 F.2d 89, 92 (6th Cir. 1991)). "[I]n general, motions for sanctions should not substitute for motions to dismiss or motions for summary judgment, which test the sufficiency of the complaint's allegations." *James v. Caterpillar, Inc.*, 824 F. App'x 374, 378 (6th Cir. 2020).

## III.   RULE 11 SANCTIONS ARE NOT WARRANTED IN THIS CASE

As this Court already held when ruling on other Defendants' motions to dismiss, the complaint properly seeks relief under 42 U.S.C. § 1985(3) for alleged violations of Plaintiff's constitutional right to be free from racially motivated violence and his right to access and use public accommodations. Indeed, Defendant Frank does not deny that a racially motivated assault occurred; rather, he seems to argue that Plaintiff deserved it for throwing the first punch while trying to defend himself. That is no defense to Plaintiff's Section 1985(3) claim, much less a basis for sanctions. As explained below, the conduct for which Defendant Frank seeks sanctions cannot meet the rigorous requirements of Rule 11(b), as the Complaint was filed for a proper purpose, is supported by existing law, and has evidentiary support on its face.

### A.   The Complaint Was Not Filed for an Improper Purpose

The Court should not impose sanctions because the Complaint was not filed for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). "The analysis of an improper purpose under Rule 11(b)(1) resembles the analysis of bad faith or an improper purpose under a court's inherent power to sanction a party by shifting fees." *Second Ave Museum, LLC v. RDN Heritage, LLC*, No. 3:20-CV-00067, 2022 WL 413247, at *5 (M.D. Tenn. Feb. 8, 2022) (citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.,* 602 F.3d 742, 752 (6th Cir. 2010)); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 n.10 (1991). Under that standard, to impose sanctions "the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prods., Inc.*, 602 F.3d at 753 (emphasis in original). Examples of the "sorts of conduct" that support a finding of "bad faith or improper purpose" include "[h]arassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the

courts . . ." *Id.* at 754. However, as the *BDT* court noted, "these sorts of conduct cannot be demonstrated *solely* by the fact that a party knowingly pursued a meritless claim or action." *Id.* (emphasis in original). Furthermore, "it is not enough that the injured party subjectively believes that a lawsuit was brought to harass, or to focus negative publicity on the injured party; instead, such improper purposes must be derived from the motive of the signer in pursuing the suit. . . [A] court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose." *In re Kunstler*, 914 F.2d 505, 518–19 (4th Cir. 1990).

Defendant Frank alleges that Rule 11 sanctions are warranted because the Complaint was filed for an improper purpose. Specifically, Defendant Frank alleges that this lawsuit was filed for the purpose of (1) inflicting financial costs on Defendants; (2) intimidating, silencing, and deterring third parties who may wish to associate with Defendant's political speech; and (3) extrajudicial political suppression. (Doc. No. 67 at 3-4). Defendant Frank's arguments fail.

Contrary to Defendant Frank's claims, this Complaint was filed to uphold Plaintiff's constitutional rights to be free from racial violence and to have equal access to public accommodations and to hold Defendants accountable for their violations of federal civil rights statutes and several common law torts. It is objectively reasonable for Plaintiff to seek redress for injuries he received as a result of Defendants' racially discriminatory conspiracy. Indeed, at the heart of Plaintiff's case is a claim under 42 U.S.C. § 1985(3) whose purpose is to provide a cause of action for individuals victimized by racially discriminatory conspiracies. *See Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971) ("Congress was wholly within its powers under § 2 of the Thirteenth Amendment in creating a statutory cause of action for Negro citizens who have been the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men."); *Rives v. Univ. of Tennessee*, No. 24-5336, 2024

WL 5103829, at \*5 (6th Cir. Dec. 13, 2024) ("Congress enacted § 1985 to address the racial violence perpetrated by groups like the Ku Klux Klan after the Civil War and during Reconstruction."). This lawsuit is thus intended to seek redress for the very harm Congress had in mind when it created a cause of action under Section 1985(3).

Defendant Frank has made spurious and conclusory allegations about Plaintiff counsel's motives for filing the Complaint. However, Defendant Frank's subjective beliefs carry no weight. *In re Kunstler*, 914 F.2d at 518–19. Defendant Frank has not identified a single action or statement by counsel, or any other facts, demonstrating that this matter was filed for an improper purpose. *BDT Prods., Inc.*, 602 F.3d at 752. Defendant Frank has failed to do so because counsel acted reasonably under the circumstances and pursued this litigation for solely legitimate reasons. As such, the Court should deny Defendant Frank's motion for sanctions under Rule 11(b)(1).

**B.      The Claims in the Complaint are Warranted by Existing Law**

The Court should not impose sanctions because the allegations in the Complaint are "warranted by existing law[.]" Fed. R. Civ. P. 11(b)(2). Rule 11(b)(2) "wards against frivolous claims and defenses." *Albright v. Christensen*, 24 F.4th 1039, 1045 (6th Cir. 2022). A legal contention "is frivolous if it is obviously without merit . . ." *Waldman v. Stone*, 854 F.3d 853, 854 (6th Cir. 2017) (discussing Fed. R. App. P. 38). Furthermore, although a complaint may warrant dismissal "pursuant to Rule 12(b)(6) for lack of factual specificity, it does not follow, therefrom, that 'the claims ... therein are [un]warranted by existing law,' as the expression is used in Rule 11(b)(2)." *Tahfs*, 316 F.3d at 595. Instead, the Court must "read [Plaintiff's] complaint in a light most favorable to [Plaintiff]" and determine whether the filing of the federal complaint was reasonable under the circumstances. *Id*.

Defendant Frank is only accused in Count One of the Complaint, which alleges that all Defendants violated 42 U.S.C. § 1985(3) by conspiring to discriminatorily deprive members of Nashville's Jewish and Black communities of their rights to the equal protection of the laws and equal enjoyment of the privileges and immunities guaranteed to citizens of the United States. (Doc. No. 1 at 26-28). As described in Section I, Plaintiff was injured and deprived of his constitutional rights as a result of Defendants' racist and antisemitic conspiracy. Defendant Frank asserts that Plaintiff's allegations are unsupported by existing law because Plaintiff admits to throwing the first punch in self-defense. (Doc. No. 67 at 3-4). According to Defendant Frank, this is a "glaring, self-defeating admission" and "the factual predicate for the suit is fundamentally destroyed" by it. *Id*. at 3. The fact that Plaintiff admits to throwing the first punch—while trying to defend himself from a violent mob— does not make this claim frivolous.

To demonstrate a conspiracy under § 1985(3) a plaintiff must prove:

(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. The plaintiff must also show the conspiracy was motivated by racial, or other class based animus.

*Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citation modified). The fact that Plaintiff threw the first punch does not defeat, much less clearly defeat, any of these elements. As such, Defendant Frank has failed to establish that Plaintiff's legal contention is frivolous.

Furthermore, Defendant Frank's argument omits critical facts contained in the Complaint that place Plaintiff's initial punch in context. **In the moments leading up to the incident, Plaintiff encountered a "contingent of upwards of a dozen or more GDL members" who were "accosting passersby, marching through downtown chanting '*Sieg Heil*,' 'white fucking power,' and 'fuck the Jews' and performing the Nazi salute."** (Doc. No. 1 at ¶ 77). As they

passed by Plaintiff's place of employment, "GDL members used antisemitic and racially charged language in a menacing manner." (*Id*. at ¶ 79). **This included one GDL member, Nicholas Alan Bysheim, calling "Plaintiff, who identifies as biracial and whose father is Black . . . a 'n\*\*\*\*r baby.'"** (*Id.* at ¶¶ 79, 80). **"The insult that Bysheim used was so aggressive that Plaintiff believed himself in threat of imminent harm and instinctively responded by striking Bysheim in order to get away."** (*Id.* at ¶ 83). Plaintiff immediately retreated on a public sidewalk. (*Id*. at ¶¶ 83, 87). As this occurred, GDL's leader Jon Minadeo shouted, "GET HIM" and, in response, other GDL members attacked Plaintiff. (*Id*. at ¶¶ 84-86, 88). **GDL members "slammed him into a parked vehicle, and attempted to punch and choke him"; "jumped on Plaintiff's back, put him in a chokehold, and attempted to gouge out his eyes"; "kicked and punched Plaintiff; and "struck Plaintiff with the pole of [a] swastika flag in the face and the ribs[.]"** (*Id*. at ¶¶ 89-92). "Plaintiff was surrounded and terrified for his life. He eventually broke free, only by biting Minadeo and then pushing him off. Plaintiff again retreated and was chased into moving traffic." (*Id*. at ¶ 93). **"As a result of the attack, Plaintiff lost sleep, suffered multiple contusions and experienced significant pain, suffering, anxiety and emotional distress, and avoided downtown Nashville out of fear for several months afterward."** (*Id*. at ¶ 96).

Viewing these facts in the light most favorable to the Plaintiff, as the Court is required to do,[10] they demonstrate that Plaintiff has a plausible argument that his initial strike was justified and, even if was not, that he subsequently withdrew from the altercation and became the victim when several GDL members attacked him in unison. Plaintiff suffered physical and emotional injuries because of this conduct. The Complaint alleges sufficient facts to establish a plausible

---

[10] *Tahfs*, 316 F.3d at 594 ("At the pleading stage in the litigation, ordinarily there is little or no evidence before the court at all, and such facts as are alleged, must be interpreted in favor of the nonmovant.")

claim that Defendants violated 42 U.S.C. § 1985(3) by conspiring to engage in racially-motivated violence targeting Black and Jewish people that resulted in injuries to Plaintiff and a deprivation of his constitutional right to be free from racial violence.[11]

### C. The Factual Contentions the Complaint Have Evidentiary Support

The Court should not impose sanctions because the Complaint's factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11(b)(3) requires attorneys to engage in a reasonable "prefiling inquiry" to ensure that a pleading or motion is "well grounded in fact." *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010). Rule 11(b)(3) does not require "absolute certainty" regarding a complaint's factual allegations. *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 913 (6th Cir. 2010).

Defendant Frank asserts that the Complaint contains untrue allegations. (Doc. No. 67 at 4). He makes the broad claim that paragraphs 6-7, 25-75 and 97-107 of the Complaint "are either contextualized random statements of imagination by which counsel hopes to hallucinate a conspiracy into existence, or they are statements of fact not brought on behalf of the Plaintiff himself[.]" (Doc. No. 67 at 4). Defendant Frank's claim is baseless. The allegations in the Complaint not only have evidentiary support, but the Complaint also includes screenshots of video footage, detailed descriptions of video footage and online materials, and direct quotes from individuals. The Complaint provides a wealth of information firmly establishing that the factual assertions have evidentiary support.[12]

---

[11] Furthermore, as this Court has previously found, Plaintiff also "pled a deprivation of his right to use public accommodations or access public amenities in two ways. First, Plaintiff has pled such a deprivation via his allegations concerning the alleged racially motivated assault against Plaintiff on a public sidewalk and street. (Doc. No. 1 at ¶¶ 78-95). Second, and alternatively, Plaintiff has plausibly alleged such a deprivation through his allegations concerning Plaintiff's continued avoidance of 'downtown Nashville [and the public accommodations and amenities therein] out of fear for several months' after the attack on Plaintiff. (*Id*. at ¶ 96)." (Doc. No. 46 at 31-32).

[12] To the extent Defendant Frank is arguing that the factual allegations do not provide a sufficient evidentiary basis to establish a conspiracy, the Sixth Circuit has held that "[a] complaint alleging conspiracy [under 42 U.S.C. §§ 1985(3)],

Furthermore, this case is at the pleading stage. Discovery is incomplete with respect to the other Defendants, and it has not even commenced for Defendant Frank as he has not responded to Plaintiff's interrogatories or requests for production that were served on February 27, 2026. As such, the Court only has at its disposal "the bare allegations of the complaint" and "little to no evidence" at all. *Tahfs*, 316 F.3d at 594. Furthermore, "such facts as are alleged, must be interpreted in favor of the nonmovant." *Id*. Defendant Frank moved for sanctions before the close of discovery. At this stage, "[w]ithout more record evidence, assessing the validity of [his] allegation is extremely difficult." *James*, 824 F. App'x at 379; *see also Tahfs*, 316 F.3d at 594 ("While a party is bound by Rule 11 to refrain . . . from making 'allegations and other factual contentions [without] evidentiary support . . . making those determinations is difficult when there is nothing before the court except the challenged complaint."). Simply put, there is no basis for the Court to find that the factual assertions in the Complaint lack evidentiary support.

## IV.     CONCLUSION

For the reasons set forth above and any reasons that appear to the Court, Defendant Frank's Motion for Sanctions should be denied.

Respectfully submitted,

/s/ Arusha Gordon

**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, Alabama 36104
Facsimile: (404) 377-0708

Scott D. McCoy
Florida Bar No. 1004965

---

whose essential deficiency is that it is lacking in sufficient factual detail and specificity, is not, perforce, '[un]warranted by existing law' or frivolous. A complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6)." *Tahfs*, 316 F.3d at 595.

Arusha Gordon
D.C. Bar No. 1035129

Huey Fischer García
Louisiana Bar No. 39571

Benjamin K. Raybin (BPR #29350)
**RAYBIN & WEISSMAN, P.C**.
424 Church Street, Suite 2120
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254- fax

Erika Jacobsen White
Maryland Bar No. 21815
**JOSEPH GREENWALD & LAAKE, PA**
111 Rockville Pike #975
Rockville, MD 20850

*Counsel for Plaintiff.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that this 5th day of May 2026 he has delivered Plaintiff's Response in Opposition to Defendant Frank's Motion for Sanctions Pursuant to Rule 11(b)(1) via ECF to Drew Justice, attorney for Defendants Goyim Defense League, Louie Dunn, Jon Minadeo, Ryan McCann, Nicholas Bysheim, and Zane Morris and to *pro se* Defendant Colby Alexander Frank. As a precaution, a copy was also emailed to *pro se* Defendant Colby Alexander Frank on May 5, 2026 to dariusthecarryus@gmail.com.

Respectfully submitted,

/s/ Arusha Gordon
Counsel for Plaintiff