Deago Buck,

  Plaintiff,

v.

Goyim Defense League, Jon Minadeo II,
Ryan Scott McCann, Nicholas Alan Bysheim,
Louie Dunn, Colby Alexander Frank, Zane
Fenton Morris, and John Does 1-10,

  Defendants.

Case No. 3:25-cv-00677

Judge Eli J. Richardson
Magistrate Judge Luke A. Evans

## COUNTER-DEFENDANT BUCK'S AMENDED ANSWER
## TO DEFENDANTS' COUNTERCLAIMS

Plaintiff Deago Buck ("Counter-Defendant" and/or "Buck") hereby answers Defendants'

("Counter-Plaintiffs") counterclaims as follows:

1. **This lawsuit deals with persecution and violence directed at a disfavored group, all in retaliation for unpopular speech.**

   a. Denies.

2. **The Counter-Plaintiffs, JON MINADEO, RYAN McCANN, NICHOLAS BYSHEIM, LOUIS DUNN, and ZANE MORRIS, are all private citizen of states other than Tennessee.**

   a. Buck lacks knowledge sufficient to form a belief about the current state citizenship status of Counter-Plaintiffs identified in the allegations in Paragraph 2.

3. **The Counter-Defendant, DEAGO BUCK, is a private citizen of Tennessee.**

   a. Admits.

4. **On July 14, 2025, JON MINADEO, RYAN McCANN, NICHOLAS BYSHEIM, LOUIS DUNN, and ZANE MORRIS were marching along the sidewalks of downtown Nashville. They were exhibiting white supremacist or Nazi imagery, aiming to spread their political message.**

   a. Buck admits that McCann, Bysheim, and Morris, at some point on July 14, 2025, were present on the sidewalk of downtown Nashville exhibiting white supremacist or Nazi imagery. Buck lacks sufficient knowledge to know the aims of Counter-Plaintiffs but denies that their aims were limited to spreading a political message. Buck lacks knowledge sufficient to form a belief about the additional allegations.

5. **Primarily, their message focused on the idea that Jewish people somehow bring about harmful effects upon American society.**

   a. Admits that, at various times during Counter-Plaintiffs' 10-day "tour" of Nashville, they and members or associates of Goyim Defense League (GDL) conveyed the idea that Jewish people somehow bring about harmful effects.

6. **To a lesser extent, they also commented negatively on the black population. Most notably, they said that black people commit more crimes.**

   a. Admits that Counter-Plaintiffs also "commented negatively on the black population." Buck lacks knowledge as to whether, on July 14, 2024 while marching through downtown Nashville, Defendants specifically stated that Black people "commit more crimes."

7. **Regardless of whether these ideas are right or wrong, the Counter-Plaintiffs all had a First Amendment right to believe whatever they want. Moreover, they even had rights to go around trying to speak these ideas to the public, and to assemble**.

a. Admits that Counter-Plaintiffs "had a First Amendment right to believe whatever they want," to speak with the public, and to assemble. However, Buck asserts that Counter-Plaintiffs' actions exceeded the conduct protected by the First Amendment.

8. **Still, because the Nashville Police know that these ideas are unpopular and might lead to violence from counter-protesters, they provided officers to help escort the Counter-Plaintiffs and to keep the peace.**

a. Buck lacks knowledge sufficient to form a belief about the allegations in Paragraph 8.

9. **Unfortunately, the police didn't quite get the job done of keeping the peace.**

a. Admits that peace was not kept. Denies that the reason the peace was not kept was a failure of the police as the violence was caused by Defendants, not the police.

10. **While the group passed by Johnny Cash's Bar & BBQ, Counter-Defendant DEAGO BUCK came out of the establishment in an aggressive fashion.**

a. Denies.

11. **Specifically, BUCK began following all the Counter-Plaintiffs. And he began speaking to them. He said, "Fight me. Fight me. Fight me."**

a. Denies that Buck followed all the Counter-Plaintiffs. Admits that Buck followed Byshiem after Byshiem engaged him. Denies that Buck said "Fight me. Fight me. Fight me."

12. **BUCK hated Nazi imagery, and/or white supremacists more generally. Ultimately, he hated the Counter-Plaintiffs for promoting such a cause.**

a. Denies as alleged. Buck did not know Counter-Plaintiffs prior to the encounter and lacked sufficient basis to "hate" them.

13. **In response to BUCK's goading, the Counter-Plaintiffs just continued marching along peacefully.**

    a. Denies.

14. **Nonetheless, BUCK followed.**

    a. Denies.

15. **Finally, when none of the white supremacists would fight him, BUCK grabbed a flag that BYSHEIM was carrying (which showed a swastika). Then he slugged BYSHEIM in the face, unprovoked.**

    a. Admits that when various members of the Counter-Plaintiffs group approached Buck and attempted to impale him with a flagpole and otherwise attack him, he acted in self-defense. Denies all other allegations as alleged.

16. **To be clear, BUCK attacked BYSHEIM because he hated the Counter-Plaintiffs' political viewpoint. And he wanted to interfere with their rights to exercise their freedoms of speech and/or assembly.**

    a. Admits that he struck Counter-Plaintiff Bysheim, but denies the motives alleged by Counter-Plaintiffs. Buck was acting in self-defense.

17. **As various members of the Counter-Plaintiffs' group approached BUCK after the punch, he then shoved another member of their group. Then he struck McCANN in the face as well as McCANN approached him. And with reckless abandon of his own safety, he began trying to fight the entire group.**

a. Denies as alleged. Admits that he attempted to defend himself after several members of Counter-Plaintiffs group attacked him.

18. **During the altercation, MINADEO was bitten by BUCK, later requiring medical treatment.**

   a. Admits only that Minadeo was bitten by Buck in an act of self-defense during the attack on him by various Counter-Plaintiffs, but lacks sufficient knowledge as to whether the bite required medical treatment.

19. **Ultimately, as a result of the altercation, BUCK and McCANN were both arrested.**

   a. Admits

20. **Because the Nashville government is biased against individuals with white supremacist beliefs and wants to encourage vigilantism against them, the Nashville prosecutors nolle'd the charges against BUCK. But they prosecuted McCANN, resulting in extensive jail time.**

   a. Buck lacks knowledge as to why Nashville prosecutors made any decisions. Buck admits that McCann was prosecuted and convicted, resulting in jail time.

21. **On July 18, 2025, BUCK went on television (WKRN) and told the public that the Nazis attacked him first — by yelling racial slurs and him, and then striking him twice with a flagpole. As he claimed, it was only after they attacked him that he "retaliated."**

   a. Plaintiff admits that he was interviewed by WKRN and that the station aired excerpts of the interview on or about July 18, 2025. Buck denies all other allegations as alleged.

22. **The allegations that he made on television were false.**

   a. Denies.

**23. The allegations — violent conduct — were defamatory.**

    a. Denies.

**24. BUCK knew that he was lying against the Counter-Plaintiffs when he made the statements**

    a. Denies.

**25. As a result of the Counter-Defendant's wrongful conduct, all the Counter-Plaintiffs suffered pain, emotional distress, and/or loss of enjoyment of life.**

    a. Denies that he engaged in wrongful conduct. Denies that the interview Buck gave was wrongful or caused Counter-Plaintiffs pain, emotional distress, and/or loss of enjoyment of life.

**26. As a result of the Counter-Defendant's wrongful conduct, they have been deterred and intimidated from exercising their constitutional right to speak freely and/or to assemble.**

    a. Denies that Buck engaged in wrongful conduct. Denies that Minadeo has been deterred and intimidated from exercising his constitutional right to speak freely. Buck lacks knowledge as to whether Counter-Plaintiffs have otherwise been "deterred and intimidated from exercising their constitutional right to speak freely and/or to assemble."

**27. As a result of the Counter-Defendant's wrongful conduct, they suffered damage to their reputations (especially McCANN, DUNN, and MINADEO).**

    a. Denies.

**28. All the wrongs charged herein were committed intentionally, maliciously, or wantonly, so as to justify punitive damages.**

a. Denies.

## COUNT ONE – BATTERY
### Tennessee Common Law
*(by Bysheim, McCann, and Minadeo, against Buck)*

**29. The other sections are hereby incorporated by reference.**

    a. Counter-Defendant incorporates by reference all prior answers.

**30. By intentionally punching, biting, or otherwise making violent and harmful physical contact with NICHOLAS BYSHEIM, RYAN McCANN, and JON MINADEO without any justification, Counter-Defendant DEAGO BUCK is liable for Battery under the Tennessee common law.**

    a. Paragraph 30 sets forth legal conclusions that do not require a response. Counter-Defendant otherwise denies any factual allegations in Paragraph 30.

## COUNT TWO – MALICIOUS HARASSMENT
### Tennessee Common Law / Tenn. Code Ann. § 4-21-701
### (by all Counter-Plaintiffs, against Buck)

**31. The other sections are hereby incorporated by reference.**

    a. Counter-Defendant incorporates by reference all prior answers.

**32. By maliciously threatening and/or assaulting the Counter-Plaintiffs generally for their exercise of the freedoms of speech and assembly, Counterefendant BUCK is liable for Malicious Harassment under the Tennessee common law and Tennessee Code Annotated § 4-21-701.**

    **a.** Paragraph 32 sets forth legal conclusions that do not require a response. Counter-Defendant otherwise denies any factual allegations in Paragraph 32.

## COUNT THREE – DEFAMATION
### Tennessee Common Law
### (by all Counter-Plaintiffs, against Buck)

33. **The other sections are hereby incorporated by reference.**

    a. Counter-Defendant incorporates by reference all prior answers.

34. **By intentionally (or at least negligently) publicizing false and defamatory statements against all the Counter-Plaintiffs to a third party, and thereby damaging their reputations, Counter-Defendant BUCK is liable for Defamation under the Tennessee common law.**

    a. Paragraph 34 sets forth legal conclusions that do not require a response. Counter-Defendant otherwise denies any factual allegations in Paragraph 34.

<strong>JURISDICTION</strong>

35. **The federal Court has subject-matter jurisdiction under 28 U.S.C. § 1367 because this case shares the same nucleus of operative fact as a federal claim that the underlying Plaintiff has already filed.**

    a. Paragraph 35 sets forth legal conclusions that do not require a response.

36. **The Court also has diversity jurisdiction per 28 U.S.C. § 1332.**

    a. Paragraph 36 sets forth legal conclusions that do not require a response.

37. **This Court in Tennessee has personal jurisdiction because the Counter-Defendant is a citizen of Tennessee.**

    a. Paragraph 37 sets forth legal conclusions that do not require a response. Counter-Defendant admits that he is a resident of Tennessee.

38. **Venue is proper in the Middle District of Tennessee, Nashville Division, because the events occurred here.**

    a. Paragraph 38 sets forth legal conclusions that do not require a response.

39. **The counterclaims are timely as a result of Tenn. Code Ann. § 28-1-114, and also Fed. R. Civ. P. 13 and 15. (The Court previously denied a Rule 12 Motion to Dismiss on November 25, 2025.)**

    a.   Paragraph 39 sets forth legal conclusions that do not require a response.

<strong>RELIEF SOUGHT</strong>

40. Plaintiff denies that Counter-Plaintiffs are entitled to any of the relief requested in the section entitled "Relief Sought" in their Counterclaims (Doc. 51).

<strong><u>Affirmative Defenses</u></strong>

<u>First Affirmative Defense</u>

41. **Failure to state a claim**. Counter-Plaintiffs fail to state a claim upon which relief may be granted.

<u>Second Affirmative Defense</u>

42. **Lack of subject matter jurisdiction**. The Court lacks subject matter jurisdiction over the claims asserted.

<u>Third Affirmative Defense</u>

43. **Standing**. Some or all of the Counter-Plaintiffs lack standing to bring the claims asserted.

<u>Fourth Affirmative Defense</u>

44. **Necessity**. The actions of Counter-Defendant were justified as necessary to protect himself and/or to deter greater harm.

<u>Fifth Affirmative Defense</u>

45. **Negligence**. Counter-Plaintiffs acted negligently and their own carelessness contributed to any injuries.

<u>Sixth Affirmative Defense</u>

46. **Assumption of the risk**. Counter-Plaintiffs assumed the risk of the injuries alleged.

<u>Seventh Affirmative Defense</u>

47. **Consent**. Counter-Plaintiffs Bysheim, McCann, and Minadeo voluntarily entered into combat by attacking Counter-Defendant.

<u>Eighth Affirmative Defense</u>

48. **Statute of Limitations.** Allegedly defamatory statement that forms the basis of the Defamation claim did not arise out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading.

Respectfully submitted,

<u>/s/Arusha Gordon</u>

**RAYBIN & WEISSMAN, P.C**.
424 Church Street, Suite 2120
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254- fax

Benjamin K. Raybin
*Local Counsel*
Tennessee Bar No. 029350

**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, Alabama 36104
Fax: (404) 377-0708

Scott D. McCoy
*Admitted pro hac vice*
Florida Bar No. 1004965

Arusha Gordon
*Admitted pro hac vice*
D.C. Bar No. 1035129

Huey Fischer García
*Admitted pro hac vice*
Louisiana Bar No. 39571
huey.fischergarcia@splcenter.org

Brant Levine
*Admitted pro hac vice*
D.C. Bar No. 472970

Joseph Yarbough
*Admitted pro hac vice*
D.C. Bar No. 1022226
joseph.yarbough@splcenter.org

**JOSEPH GREENWALD & LAAKE, PA**
6404 Ivy Ln., Ste. 400
Greenbelt, Maryland 20770

Erika Jacobsen White
*Admitted pro hac vice*
Maryland Bar No. 21815

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that this June 5, 2026, he has delivered Counter-Defendant Buck's Amended Answer To Defendants' Counterclaims via ECF to attorney Drew Justice, attorney for Defendants Goyim Defense League, Jon Minadeo, Ryan McCann, Nicholas Bysheim, Zane Morris and Louis Dunn; and to *pro se* Defendant Colby Alexander Frank.

Respectfully submitted,

/s/Arusha Gordon
Arusha Gordon
Counsel for Plaintiff.