**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

DEAGO BUCK,

Plaintiff

v.

GOYIM DEFENSE LEAGUE, et al.,

Defendants

**3:25-cv-677**

JURY DEMAND

Judge Richardson
Judge Newbern

---

**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW BY GOYIM DEFENSE LEAGUE, JON MINADEO, NICHOLAS BYSHEIM, RYAN McCANN, LOUIS DUNN, AND ZANE MORRIS**

---

All Defendants except for Colby Frank (who is filing separately) hereby move for summary judgment. They should be entitled to judgment as a matter of law on the federal claims, which accuse them of conspiracy to violate civil rights (and/or failure to intervene against said conspiracy). Simply put, Plaintiff Deago Buck started the fight at the heart of this case. And despite what his Complaint says, he did not do it spontaneously, upon being called a slur or threatened as aggressors marched by. Instead, he now acknowledges that he *pursued* the group down the sidewalk — as they walked away and tried to *avoid* a fight. Hence, there is no evidence, or reason to believe, that they conspired in advance to fight or threaten him. The Court should dismiss his federal claims on the merits. Then it should dismiss all remaining claims for lack of jurisdiction and/or per voluntary request.

## STATEMENT OF FACTS

Everyone agrees that the Defendants came to Nashville and marched the streets on July 14, 2024. In fact, the hours-long events of that day are captured on video, a "Name the Nose Tour Livestream," being manually filed with this motion. Nonetheless, despite the allegations in the lawsuit, none of the Defendants discussed, planned, or agreed with anyone to get into fights with, or physically to intimidate or harass, blacks or other minorities. (Minadeo Declaration ¶ 1; Bysheim Declaration ¶ 1; Dunn Declaration ¶ 1; McCann Declaration ¶ 1; Morris Declaration ¶ 1; Frank Declaration ¶ 1). Further, none of them is aware of anyone else having done so, either. (*Id.*) Similarly, none of them discussed, planned, or agreed with anyone to interfere with or trespass against businesses, religious centers, or other types of private property. (Minadeo Declaration ¶ 5; Bysheim Declaration ¶ 7; Dunn Declaration ¶ 4; McCann Declaration ¶ 4; Morris Declaration ¶ 4; Frank Declaration ¶ 4). None of them is aware of anyone else having done so, either. (*Id.*)

Instead, their purpose in carrying out the Nashville Name the Nose Tour was simply to spread their political message. (Minadeo Declaration ¶ 2; Bysheim Declaration ¶ 2; Dunn Declaration ¶ 2; McCann Declaration ¶ 2; Morris Declaration ¶ 2; Frank Declaration ¶ 2). The main part of that message involved speaking against Jews. (*See* Minadeo Declaration ¶ 7). In any event, none of Jon Minadeo's other tours in other cities has resulted in any violence. (Minadeo Declaration ¶ 3).

The "Goyim Defense League" is not a real legal entity. (Minadeo Declaration ¶ 7). Instead, it is just a name that Minadeo gave his social movement — meant to be satirical. (*Id.*) As these men of the "League" thus paraded past the bar where Plaintiff Deago Buck worked, he claims that he heard Defendant Nicholas Bysheim say something, possibly calling him a "nigger baby." (*See* Buck Depo. Tr. 7:20-24 and 9:11-18). Although he says that he heard it, he also seems to indicate that he was unsure of what was said. (*Id.*) Since he was unsure, he decided to follow Bysheim in order to ask for "confirmation" of what was supposedly said. (*Id.*) Notably, Nicholas Bysheim denies that he even used any racial slurs or aggressive language at all leading up to the fight. (Bysheim Declaration ¶¶ 3 and 5). Still, per the summary judgment standard, this motion will assume that Buck is telling the full truth.

Hence, supposedly seeking confirmation of what Bysheim said, Plaintiff Buck followed the Defendants about 30-50 feet down the sidewalk. (Buck Depo. Tr. 9:11-18; Bysheim Declaration ¶ 4; *see also* Lainey Wilson Video). While pursuing, he kept saying, "Fight me. Fight me. Fight me." (Bodycam Video; Bysheim Declaration ¶ 4; *see also* Buck Depo. Tr. 12:6—13:3). His own provocations are captured on video. Initially, no one fought him. (*Id.*)

Eventually, though, Buck confronted Defendant Bysheim face to face. (Lainey Wilson Video). After a brief physical standoff, Buck threw the first blow. (*Id.*; *see also* Buck Depo. Tr. 13-14). He struck Bysheim in the face. (*Id.*) Bysheim and others

have called it a punch, whereas Buck calls it only a slap. Either way, the event is captured on video. (Livestream Video; Lainey Wilson Bar Video). A fight ensued. (*Id.*) This federal lawsuit by Buck followed. (RE 1, Complaint).

## ARGUMENT

The Defendants should receive summary judgment because the Plaintiff lacks sufficient evidence to prove any federal claim. Moreover, if the federal claims get dismissed, then the Court should dismiss the remainder of the claims and counterclaims without prejudice, either for lack of subject-matter jurisdiction or per voluntary request under Rule 41. In this way, the Court should dismiss the case as a whole via summary judgment.

A party is entitled to summary judgment if he can show that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. When deciding summary judgment, the court should resolve credibility disputes in the non-movant's favor and award him any reasonable inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Still, if the movant is entitled to judgment as a matter of law even under that standard, the court should certainly award summary judgment. *Id.* To start, a moving party bears the burden of either negating the plaintiff's case via evidence or affidavit, or otherwise demonstrating through the record that the plaintiff simply cannot prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Here, the Defendants have all filed declarations negating the elements of conspiracy. In

any event, they further contend that the Plaintiff simply lacks evidence of a conspiracy.

Importantly, for any claim of conspiracy, the factfinder may not find a tort conspiracy merely because the available evidence is "consistent with" with a conspiracy. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 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 (internal citation omitted). After all, in many cases, individuals may still act in parallel fashion even without a conspiracy. Hence, to prove an actual conspiracy, the plaintiff bears the burden of showing evidence that "tends to exclude the possibility" of independent action. *Id.* As discussed below, the Plaintiff cannot meet this standard.

## A. The Plaintiff Cannot Prove his Federal Claims

Here, the Plaintiff alleges in Count 1 that he suffered from racial violence — and/or the denial of public accomodations based on race-related threats or harassment — and that the conduct fits the statute, 42 U.S.C. §§ 1985. Specifically, he charges that it would fit the statute because the Defendants conspired in advance. The Sixth Circuit has said that for Section 1985(3) liability, a plaintiff must prove: (1) a conspiracy, (2) for the purpose of depriving any class of persons of equal protection, (3) an act in furtherance, and (4) an injury or deprivation. *Vakilian v. Shaw*, 335 F.3d 509, 518-19 (6th Cir. 2003). To be clear, previously this Court did rule that racially-motivated violence violates the Thirteenth Amendment.

Hence, among other things, the Plaintiff needs to prove a conspiracy to commit racial violence, and an act in furtherance. Here, Count 2 also alleges, alternatively, that the Defendants simply *knew* of such a conspiracy but failed to prevent it. The statute 42 U.S.C. § 1986 provides for liability not only knows about a conspiracy and fails to prevent it, but also knows that the injury is "about to" occur. Ultimately, though, under either federal count, the main question remains of whether anyone conspired to interfere with accommodations, attack black people, or, as the Plaintiff seems to frame it, even to scare black people into attacking first. Regardless of the exact theory, here the evidence fails to show that the Defendants conspired to accomplish any such outcome.

To start, the Defendants have all declared under penalty of perjury that they did *not* plan any fights. (Minadeo Declaration ¶ 1; Bysheim Declaration ¶ 1; Dunn Declaration ¶ 1; McCann Declaration ¶ 1; Morris Declaration ¶ 1; Frank Declaration ¶ 1). Nor did they plan to harass, or physically to intimidate, or to interfere with anyone's use of businesses or private property. (Minadeo Declaration ¶ 5; Bysheim Declaration ¶ 7; Dunn Declaration ¶ 4; McCann Declaration ¶ 4; Morris Declaration ¶ 4; Frank Declaration ¶ 4). Notably, the Defendants have not offered any formal declaration from Defendant "Goyim Defense League." Instead, Jon Minadeo has offered a declaration testifying that the League does not really exist. (Minadeo Declaration ¶ 7). For summary judgment purposes, that declaration

should suffice to 'negate' any vague allegation of conspiracy against the League, as somehow distinct from any allegations against the others.

On the federal claims, the essence of the defense is that although two fights did indeed occur during the Nashville Name the Nose Tour, those fights were unplanned. None of Jon Minadeo's other tours has involved any fights or violence. (Minadeo Declaration ¶ 3). And while it is certainly possible that a group might *conspire* to start fights, still the law remains clear that offering evidence "merely consistent" with such possibility does not allow for any inference of conspiracy. *Twombly*, 550 U.S. 544, at 554. In other words, engaging in fights with multiple members might always be "consistent" with having conspired in advance to start the fights. But it is also, at least equally consistent with a group simply getting into a fight spontaneously.

By law, the Plaintiff needs to produce evidence that would "exclude the possibility" of a group getting into a fight through parallel, spontaneous action. *See Twombly*, 550 U.S. 544, at 554. He cannot do so. Here, the most obvious reason for why multiple demonstrators might get into a fight is because they were marching together, and then Buck undeniably came and assaulted them. To be clear, although parts of the fight might be debated, undeniably Buck launched it by punching (or as he says, slapping) Defendant Nicholas Bysheim. Certainly, in terms of state-law claims of battery, a jury might always debate whether the Defendants were justified in their specific response. But regardless of justification or legality,

nothing about the response tends to to "exclude the possibility" of a mere spontaneous reaction to being punched.

But the Plaintiff's claim gets weaker still. Not only is the fight, at best, "merely consistent" with a conspiracy, but seemingly the events leading up to it are *downright inconsistent* with a conspiracy. The undisputed facts show that Bysheim and the group tried walking away. (Bodycam Video) To be clear, Buck's theory seems to be that the group conspired either to attack him, or possibly to scare him into attacking them so that a fight would occur. Yet the group *walked away*. For Buck's theory to be true, the group would have to conspire in advance to fight black people, call out a mostly white-looking man a racial slur in order to get him to fight, and then *retreat* — all in the hope that Buck would pursue and start the fight, despite their best efforts to get away. The evidence does not fit the theory. Active physical retreat by alleged conspirators is the antithesis of an agreement to attack. Where record evidence is not only "equally plausible" with non-conspiratorial behavior, but affirmatively refutes the mechanics of a conspiracy, summary judgment is required. *Matsushita Electr. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) (Raising prices inconsistent with conspiracy to drop prices below market levels). Indeed, where an alleged co-conspirator has squarely "opted out of the key component of the [alleged] plan," it tends to disprove his involvement in said conspiracy. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). In *Bazzi*, the court found no plausible conspiracy by a particular officer to frame a

suspect, given that he actively opted out by refusing to write a false report. Here, all the Defendants tried opting out of a fight with Buck. Especially in that light, Buck has not produced enough evidence to allow a reasonable jury to find or infer a conspiracy.

Finally, the Defendants simply point out that Buck deposed numerous individuals and obtained various written and oral communications from them (including their internet messages with each other). As far as the Defendants are aware, no evidence of the supposed conspiracy has arisen. In the end, no rational jury could find the conspiracy. As such, Buck's federal claims should be dismissed.

### B. The Court should Decline Supplemental Jurisdiction

Assuming that the Court finds no valid federal claim, the Defendants request that the Court dismiss the rest of the case without prejudice for lack of jurisdiction. Notably, Buck himself only pled "federal question" jurisdiction. (RE 1, Complaint, ¶ 9). His Complaint even charges that Defendant Colby Frank is from the same state as him, (RE 1, ¶¶ 12 and 21), although admittedly the record since has been a little obscure over where Frank really resides. (*See* RE 45, Frank's Motion to Dismiss for Bad Service). In any event, Buck does not specify any damages over $75,000. (*See* RE 1, Complaint ¶¶ 151-55). Therefore, diversity jurisdiction seems unavailable to Buck. And although the Countercomplaint filed by most of the Defendants does plead diversity, (RE 51, p. 56, ¶ 36), these Defendants conditionally ask to dismiss

their claims voluntarily, per Rule 41(a) — without prejudice — contingent upon the Court's finding that it otherwise lacks jurisdiction over the case.

According to 28 U.S.C. § 1367, a court may accept supplemental jurisdiction over state claims where they form part of the same controversy as the claims giving rise to original, federal jurisdiction. Nonetheless, a federal court may decline to exercise supplemental jurisdiction if the state claim predominates over the federal claims, or if the district court has already dismissed all the federal claims. 28 U.S.C. § 1367(c)(2)-(3). Here, the Defendants are requesting that the Court dismiss all the federal claims — including their own diversity claims, if no other federal claims or jurisdiction would otherwise remain. If the Court dismisses all the federal claims, then there would be little reason to retain the Plaintiff's state-law claims.

## CONCLUSION

WHEREFORE, the Court should grant summary judgment to the Defendants on the federal claims, and dismiss the remainder of the claims and counterclaims either voluntarily or for lack of jurisdiction, thereby dismissing the case.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for "Goyim Defense League," Jon Minadeo, Nicholas Bysheim, Ryan McCann, Louis Dunn, and Zane Morris
1902 Cypress Drive
Murfreesboro, Tn 37130
(615) 419-4994
drew@justicelawoffice.com

**Certificate of Service**

The undersigned lawyer certifies that this September 28, 2026, he has delivered this filing via ECF to Ben Raybin, 424 Church Street, Suite 2120, Nashville, TN 37219 <braybin@nashvilletnlaw.com>; and Colby Frank, P.O. Box 1177, 32459 <dariusthecarryus@gmail.com>.

/s/ Drew Justice
Drew Justice #29247