UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEAGO BUCK, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:25-cv-00677 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| GOYIM DEFENSE LEAGUE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court[1] is the report and recommendation (Doc. No. 105, "R&R") of the Magistrate Judge. Via the R&R, the Magistrate Judge recommends that the Court deny the motion to dismiss (Doc. No. 66, "Motion"), filed by one of the Defendants and Counter Plaintiffs in this action, Colby Alexander Frank ("Frank"). Via the Motion, Frank seeks the dismissal of Count I of the complaint (Doc. No. 1, "Complaint") of Plaintiff and Counter Defendant Deago Buck ("Buck") to the extent (and only to the extent) that Count I (the sole count in the Complaint that is brought against Frank) is brought against Frank. (Doc. No. 105 at 1, 9). Frank has filed objections (Doc. No. 106, "Objections")[2] to the R&R. Buck has filed a response (Doc. No. 110, "Response") to Frank's Objections.

For the reasons stated herein, the Court will adopt the R&R (Doc. No. 105) in full and deny the Motion (Doc. No. 66).

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Herein, a given use of the term "Objections" may refer to the document (Doc. No. 106) itself, to the purported objections contained therein (i.e., the "objections" to the R&R contained within the "Objections"), or both.

## BACKGROUND

The reader's familiarity with the factual allegations in the Complaint, which the Court reviewed in its memorandum opinion at Docket No. 46, is presumed. And so, in reviewing the background of this action, the Court limits itself to a review of the procedural background of this case to the extent relevant to the Motion and the R&R.

On December 1, 2025, Frank filed his first motion to dismiss (Doc. No. 48),[3] therein arguing that the claims brought against him in the Complaint should be dismissed pursuant to Rule 12(b)(4) and (b)(5) of the Federal Rules of Civil Procedure for insufficient process and insufficiency of service of process, respectively. (Doc. No. 48 at 1-3) On March 27, 2026, the Magistrate Judge recommended that this motion (Doc. No. 48) be denied. (Doc. No. 63). The Court adopted that recommendation on April 17, 2026. (Doc. No. 65).

Frank then filed the Motion. Via the Motion, Frank seeks the dismissal of Count One of the Complaint to the extent that Count One (the sole count in the Complaint that is brought against Frank) is brought against him. Frank specifically argues that the Motion should be granted because (according to Frank) the Complaint is a "shotgun pleading" (Doc. No. 66 at 3-6) and because (again according to Frank) the Complaint fails to sufficiently allege that Frank participated in a conspiracy. (*Id.* a 9-15). Frank also argues that the Motion should be granted because (according to Frank) Buck lacks standing to bring claims against Frank (*id.* at 6-9) and because (according to Frank) the Complaint fails to sufficiently allege damages. (*Id.* at 15-16).

In the R&R, the Magistrate Judge concluded that none of Frank's asserted bases for dismissal were availing and recommended that the Motion (Doc. No. 66) be denied in its entirety.

[3] This motion appears twice on the docket, at Docket Nos. 45 and 48. Because the papers in each docket entry are identical, the Court will treat both docket entries as a single motion, will refer to this motion in the singular, and will cite this motion with reference to the later filed version of the motion at Docket No. 48.

(Doc. No. 105 at 1, 9). As noted above, Frank then filed Objections (Doc. No. 106) to the R&R, to which Buck filed a Response (Doc. No. 110).

## DISCUSSION

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which a *proper* objection is made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).[4] The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.*

---

[4] Significantly, and perhaps surprisingly, the statute does not actually direct the district judge to expressly rule on the objections themselves (i.e., expressly sustain or reject the objector's *specific* criticism(s) of what the magistrate judge did). Instead of requiring the district judge to determine *the* validity of the objections to what the magistrate judge did, the statute requires the district judge to make a determination—*de novo*, which inherently means ultimately without reference to whether what the magistrate judge did was objectionable—as to the portion(s) of the report and recommendation to which objection was made. Moreover, since the review of the objected-to portions of the report and recommendation is *de novo*, any critiquing of what the magistrate judge did ultimately would be dicta (albeit relevant and probative dicta to the extent that such critiquing explains the analysis underlying the district judge's determination of the objected-to portions of the R&R). Additionally, district judges in this Circuit not infrequently either decline to rule on (or, to the same effect, deny as moot) particular objections on the specific ground that so doing is unnecessary to rule on the objected-to portion of the report and recommendation. *E.g., Collins v. Bright*, No. 2:13-CV-02987-JPM-CGC, 2021 WL 5205622, at *3 (W.D. Tenn. Nov. 9, 2021) ("[T]his objection does not affect or alter the conclusions of the Magistrate Judge and is overruled as moot."); *Lashuay v. Fornwalt*, No. 1:15-CV-1109, 2017 WL 4160947, at *1 (W.D. Mich. Sept. 20, 2017) ("This Court need not resolve all of the objections," because only some of them needed to be addressed in order to resolve the motion that was the subject of the report and recommendation); *Weatherspoon v. Williams*, No. 2:14-CV-108, 2016 WL 6070994, at *1 (W.D. Mich. Oct. 17, 2016) ("Plaintiff's objections are irrelevant and will be denied."); *Bowers v. Burnett*, No. 1:08-CV-469, 2011 WL 1047343, at *2 n.1 (W.D. Mich. Mar. 18, 2011) (noting that the Court need not resolve an objection to the extent that the objector's position on the R&R has other fatal deficiencies); *Powell v. Alcoa High Sch*., No. 3:10-CV-212, 2010 WL 2598260, at *2 (E.D. Tenn. June 24, 2010) ("Because this objection is irrelevant to [the magistrate judge's] recommendations, it is hereby overruled.") *Cline v. Kelly*, No. 09CV859, 2010 WL 1006529, at *9 n.1 (N.D. Ohio Mar. 16, 2010) ("The Court acknowledges [the petitioner's] objection, but need not resolve it because that specific fact is not relevant to the resolution of any of the grounds for relief set forth in [the] Petition" that the magistrate judge had recommended be denied.).

Nevertheless, after announcing below the conclusion that it reached upon the required *de novo* review, the Court specifically addresses Frank's various objections to explain why they did not incline the Court to accept his position on *de novo* review.

A district judge is not required to review, under a *de novo* or any other standard, those aspects of a report and recommendation to which no proper objection is made. *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Sec.*, No. 3:18-CV-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).

"Only 'specific written objections' to the magistrate judge's proposed factual findings and legal conclusions are 'proper' under Federal Rule of Civil Procedure 72(b)." *Frias v. Frias*, No. 2:18-CV-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019). Furthermore, Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of a magistrate judge's report or proposed findings or recommendations to which an objection is made. L.R. 72.02(a); *see also See* Fed. R. Civ. P. 72(b)(2). Significantly, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *Frias*, 2019 WL 549506, at *2 (internal citations and quotations omitted). In other words, "the district court need not provide *de novo* review," or any other type of review, "where the objections are 'frivolous, conclusive or general,'" and therefore improperly made. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). *See also Ashraf*, 322 F. Supp. 3d at 881 ("The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made." (citation omitted)); *Benson*, 2018 WL 6322332, at *3 (same).

Having conducted a *de novo* review of those portions of the R&R to which Frank objected, the Court finds just as the Magistrate Judge found. In the objected-to portions of the R&R, the Magistrate Judge applied the proper legal standards in his evaluation of the Motion and came to the same conclusion as the undersigned would have if the undersigned had been evaluating the Motion in the first instance. That is to say, the Court reaches precisely the same conclusion as to Frank's Motion as the Magistrate Judge did in the objected-to portions of the R&R.

Frank's Objections fail to convince the Court otherwise. Frank claims that the R&R does not identify "[alleged] facts plausibly showing that Frank actually shared in the conspiratorial objective." (Doc. No. 106 at 2). The Court disagrees. Notably, consistent with the Court's lengthy footnote above, the question here on *de novo* review is actually whether the Complaint alleges facts plausibly showing that Frank actually shared in the conspiratorial objective, and not whether the R&R *expressly identifies* alleged facts from the Complaint plausibly showing that Frank actually shared in the conspiratorial objective. But in any event, the R&R actually *does* identify such facts:

> Here, the complaint plausibly alleges that the GDL[, i.e., the Goyim Defense League,] is a white supremacist group that traveled to Nashville with the singular purpose "of conducting a campaign of harassment, threats, intimidation, and violence against people who were, or were perceived to be, Black or Jewish." (Doc. No. 1 at 1). The Complaint plausibly alleges that Frank is a member or associate of the GDL who participated in an overt act in furtherance of the conspiracy. Frank was involved in the [July 13, 2024] harassment and eventual attack of a man simply because he was of Jewish decent. According to the complaint, Frank was one of many GDL members who prevented the man from leaving and engaged in celebration after the assault took place. His presence during this incident and celebration afterward stand, at least at this point, as sufficient circumstantial evidence of his involvement in the overall conspiracy.

(Doc. No. 105 at 7).

Attempting to assert the inadequacy of the R&R in identifying facts from which an inference of conspiratorial objective could be drawn, Frank downplays and understates in misleading fashion the alleged facts from the Complaint (Doc. No. 106 at 2-3). His argument fails.

Frank next argues that the R&R "improperly treats conduct involving a non-party on July 13 as sufficient to establish liability for the July 14 Buck incident."[5] (*Id.* at 3). The idea here seems to be that even assuming that the Complaint does allege enough facts (including those related to an alleged attack on a non-party on July 13, 2024) to establish the conspiratorial objective on Frank's part, it does *not* suffice to establish Frank's conspiratorial objective with respect to the alleged conduct (which occurred on July 14, 2024) whereby *Plaintiff* was injured. Although this is not a frivolous argument, the Court ultimately rejects it because the facts alleged in the Complaint make it reasonably inferable that the scope of Frank's conspiratorial agreement was broad enough to encompass the attack (by alleged members of the conspiracy) upon Plaintiff on July 14.

The Court is loath to pronounce that as a matter of law the alleged facts could not support a finding that the scope of the conspiracy into which Frank (allegedly) entered was not as broad as Plaintiff claims; this is because in the civil (and for that matter) criminal context, the scope of a conspiracy is a question of fact for the jury to decide. *See, e.g., Aetna Cas. & Sur. Co. v. P & B Autobody*, 43 F.3d 1456 (1st Cir. 1994) (referring to the question of whether a particular transaction "was within the scope of the conspiracy" as a factual issue for the jury to decide), *supplemented sub nom. Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546 (1st Cir. 1994); *In re FTX Cryptocurrency Exch. Collapse Litig.*, 677 F. Supp. 3d 1379, 1382 (U.S. Jud. Pan. Mult. Lit. 2023) (referring to "the existence and scope of a conspiracy" as "factual questions")

[5] This quotation was taken from a header in the Objections. The capitalization of this quotation has been altered by the Court.

*United States v. Huddleston*, No. 3:16-CR-61, 2017 WL 3332757, at *8 (E.D. Tenn. Aug. 3, 2017) ("The jury, and the jury alone, addresses factual issues relating to a conspiracy's scope and duration." (citing *United States v. Cunningham*, 679 F.3d 355, 374 (6th Cir. 2012))); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (U.S. Jud. Pan. Mult. Lit. 1981) ("[T]hese actions share numerous questions of fact concerning the existence vel non of the alleged conspiracy and its scope, participants, means of operation and effects.")

Frank next objects that "'presence' and 'celebration afterward' do not plausibly establish a prior agreement to participate in a single unlawful plan."[6] (Doc. No. 106 at 4). But Frank overstates what the factual allegations of a complaint need to do; rather than plausibly "establish" the elements of an offense definitively, the factual allegations need only plausibly *suggest* the existence of the elements. Moreover, Frank (unlike the R&R) omits allegations of the Complaint that add greatly to the suggestion of plausibility: that GDL is a white supremacist group whose members (which included Frank) traveled to Nashville with the singular purpose "of conducting a campaign of harassment, threats, intimidation, and violence against people who were, or were perceived to be, Black or Jewish." (Doc. No. 1 at ¶ 1).

Frank next states (and the Court does not dispute) that "[t]he Complaint's allegations must be evaluated as to Frank individually," and then argues that the R&R failed to do this, inasmuch as it "relies extensively upon generalized allegations concerning GDL as an organization." (Doc. No. 106 at 5). But the R&R *did* evaluate the Complaint's *allegations* as to Frank individually, and because those allegations included that Frank was a member of GDL (Doc. No. 1 at ¶ 21), and (as is at least easily inferable from the Complaint) that Frank traveled to Nashville as part of a GDL group, it was entirely appropriate to consider the allegations concerning the nature and objectives

[6] This quotation was taken from a header in the Objections. The capitalization of this quotation has been altered by the Court.

of the GDL; such consideration, far from *replacing* an individualized evaluation of Frank in particular, was *part of* an individualized evaluation of Frank individually.

Frank next complains that the "[R&R]'s standing analysis depends upon the same unsupported assumption of conspiracy membership"[7] as did the R&R's analysis concerning whether the Complaint stated a claim against Frank (the subject of all prior objections). (Doc. No. 106 at 5). But this argument fails because the R&R did not make "unsupported assumptions," but rather relied on factual allegations (and inferences that could be drawn therefrom) to conclude that they plausibly suggested liability on Frank's part.

Finally, Frank objects that the R&R "improperly treats allegations of racial political expression as evidence that all associated persons shared an agreement to commit racial violence."[8] (*Id.* at 6). But as indicated above, the nature and objectives of GDL as a group (which are reflected in the racial political expression of GDL that is set forth in the Complaint (Doc. No. 1 at 9-10)) are relevant to an individualized evaluation of the plausibility of the conspiracy-based liability of individuals (including Frank) who are (allegedly) members of GDL. True, the racial political expression of GDL is merely *relevant* and not conclusive on this evaluation, but that is exactly how the R&R treated it.

In sum, the Objections as a whole are not frivolous, but they are not meritorious either, and they do not sway the Court's *de novo* evaluation of the parts of the R&R to which they pertain.

---

[7] This quotation was taken from a header in the Objections. The capitalization of this quotation has been altered by the Court.

[8] This quotation was taken from a header in the Objections. The capitalization of this quotation has been altered by the Court.

## CONCLUSION

For the reasons discussed above, the R&R (Doc. No. 105) is adopted and approved and the Motion (Doc. No. 66) is **DENIED**.

IT IS SO ORDERED.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE